Marino v Marino (2020 NY Slip Op 02922)





Marino v Marino


2020 NY Slip Op 02922


Decided on May 20, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
CHERYL E. CHAMBERS
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2018-14738
2018-14881
2018-14882
 (Index No. 202775/13)

[*1]Donna Marino, respondent-appellant,
v
Frank Marino, appellant-respondent.


Law Offices of Russell I. Marnell, P.C., East Meadow, NY, for appellant-respondent.
Gassman Baiamonte Gruner, P.C., Garden City, NY (Stephen Gassman and Karen Bodner of counsel), for respondent-appellant.
Jill C. Stone, Garden City, NY, attorney for the children.



DECISION & ORDER
In an action for a divorce and ancillary relief, the defendant appeals from (1) an amended decision of the Supreme Court, Nassau County (Sharon M.J. Gianelli, J.), entered October 30, 2018, (2) an order of the same court entered October 31, 2018, and (3) stated portions of a judgment of divorce of the same court entered November 5, 2018, and the plaintiff cross-appeals from stated portions of the judgment of divorce. The order granted the plaintiff's motion pursuant to CPLR 4404(b) to set aside a decision of the same court dated August 6, 2018, determining that the defendant was entitled to an award of counsel fees in the sum of $72,476.95 and determined that the defendant was entitled to an award of counsel fees in the sum of only $30,551.95. The judgment of divorce, insofar as appealed from, upon decisions of the same court dated February 16, 2018, and August 6, 2018, made after a nonjury trial, and a separate decision also dated August 6, 2018, inter alia, (1) set forth a parental access schedule for the defendant, (2) failed to award the defendant maintenance, (3) directed the defendant to pay the sum of $1,425 per month in basic child support and 34% of certain add-on expenses, (4) failed to direct the plaintiff to pay for the defendant's health insurance, (5) awarded the plaintiff exclusive use and occupancy of the marital residence until the parties' youngest child attained the age of 18 and awarded the defendant 40% of its stipulated value, to be paid within 90 days after the youngest child's 18th birthday or within 10 days after the closing of a sale, (6) failed to award the defendant a credit for the monies spent down from the parties' investment accounts during the pendency of the action and awarded the defendant only 35% of the value of the Morgan Stanley and Wells Fargo investment accounts, and (7) directed the plaintiff to pay counsel fees pursuant to the separate decision dated August 6, 2018. The judgment of divorce, insofar as cross-appealed from, inter alia, (1) awarded the plaintiff child support in the sum of only $1,425 per month and directed that the defendant only pay 34% of certain add-on expenses, (2) failed to direct the defendant to pay his pro rata share of the children's unreimbursed dental expenses and summer activities, (3) awarded the defendant 50% of the value of the parties' vacation home in Pennsylvania, and (4) awarded the defendant counsel fees.
ORDERED that the appeal from the amended decision is dismissed, as no appeal lies [*2]from a decision (see Schicchi v J.A. Green Constr. Corp., 100 AD2d 509); and it is further,
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment of divorce is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof awarding the defendant, contingent upon him having in place any necessary ancillary support, aid, and services that the parties' two youngest children require while in his care, parental access with the two youngest children on alternating weekends from Friday at 6:00 p.m. to Saturday at 4:00 p.m. and Sunday from 2:00 p.m. to 6:00 p.m., and substituting therefor a provision awarding the defendant, contingent upon him having in place any necessary ancillary support, aid, and services that the parties' two youngest children require while in his care, parental access with the two youngest children on alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m., (2) by deleting from the tenth decretal paragraph thereof the words "upon James Ryan Marino attaining the age of eighteen (18), the Defendant shall be entitled to 40% of One Million Two Hundred Thousand Dollars ($1,200,000), and that the Plaintiff shall have the option of either selling the marital residence and providing the Defendant with Four Hundred and Eighty Thousand Dollars ($480,000), or to buy out the Defendant's share by paying him $480,000 within ninety (90) days after James' 18th birthday," and substituting therefor the words "upon James Ryan Marino attaining the age of eighteen (18), the Plaintiff shall have the option of either selling the marital residence and providing the Defendant with 40% of the net proceeds after payment of usual and customary closing costs, or buying out the Defendant's share by paying him 40% of the fair market value of the marital residence within ninety (90) days after James' 18th birthday," (3) by adding a provision thereto directing the defendant to pay his pro rata share, 34%, of the children's unreimbursed dental expenses and his pro rata share, 34%, of the children's reasonable summer camp expenses, required as and for child care in order for the plaintiff to be employed, (4) by deleting from the sixth decretal paragraph thereof the words "(but not dental expenses)," and (5) by deleting the provision thereof directing that counsel fees shall be paid in accordance with the separate decision dated August 6, 2018, and substituting therefor a provision directing the plaintiff to pay counsel fees in the sum of $30,551.95 to the defendant's counsel as set forth in the amended decision entered October 30, 2018; as so modified, the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment of divorce in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment of divorce (see CPLR 5501[a][1]).
The parties were married on August 6, 1994, and have five children. The plaintiff commenced this action for a divorce and ancillary relief by filing a summons with notice on October 10, 2013. The Supreme Court held bifurcated nonjury trials on custody and financial issues in 2017 and 2018, respectively.
The custody trial addressed the defendant's conversion initially from Catholicism to the Lutheran faith, and then to the Jehovah's Witness faith, while the plaintiff and children remained Lutheran after following the defendant from Catholicism to the Lutheran faith. After the custody trial, the plaintiff was awarded sole custody of the minor children and the defendant was awarded parental access with the parties' two youngest children, inter alia, on alternating weekends from Friday at 6:00 p.m. to Saturday at 4:00 p.m. and Sunday from 2:00 p.m. to 6:00 p.m.
After the trial on financial issues, the Supreme Court, inter alia, denied the defendant's request for maintenance and health insurance, imputed $130,000 in annual income to the defendant, and directed him to pay $1,425 per month in basic child support and 34% of certain add-on expenses. The court also awarded the plaintiff exclusive use and occupancy of the marital residence until the youngest child turned 18, awarded the defendant 40% of the stipulated value of the marital residence, awarded the defendant 50% of the value of the parties' vacation home in Pennsylvania, and denied the defendant's request for a credit for monies spent down from the [*3]parties' joint investment accounts during the pendency of the action.
After the trials, in a decision dated August 6, 2018, the Supreme Court determined that the plaintiff was required to pay 65% (or $72,476.95) of the defendant's counsel fees. The plaintiff moved pursuant to CPLR 4404(b) to set aside the counsel fees decision. In an order entered October 31, 2018, the court granted the plaintiff's motion, noting that it had erred in the counsel fees decision because it only meant for the plaintiff to pay 65% (or $30,551.95) of the defendant's outstanding balance of counsel fees, not the total amount requested. An amended decision, reflecting the change, was entered on October 30, 2018.
The parties' judgment of divorce was entered on November 5, 2018, but the judgment did not incorporate the counsel fees award determined in the amended decision entered October 30, 2018. The defendant appeals, and the plaintiff cross-appeals, from stated portions of the judgment of divorce.
We disagree with the Supreme Court's determination to limit the defendant's parental access on alternating weekends with the two youngest children from Friday at 6:00 p.m. to Saturday at 4:00 p.m. and Sunday from 2:00 p.m. to 6:00 p.m. "The paramount concern when making a parental access determination is the best interests of the child, under the totality of the circumstances" (Matter of Valesquez v Kattau, 167 AD3d 912, 913; see Eschbach v Eschbach, 56 NY2d 167, 172). "Parental access is a joint right of the noncustodial parent and of the child'" (Matter of Cuccia-Terranova v Terranova, 174 AD3d 528, 529, quoting Weiss v Weiss, 52 NY2d 170, 175). "Parental access with a noncustodial parent is presumed to be in the best interests of the child" (Matter of Parris v Wright, 170 AD3d 731, 731). Here, the record failed to demonstrate a basis for interrupting and impinging upon the defendant's meaningful parental access by directing that he return the two youngest children to the plaintiff for the time period from Saturday at 4:00 p.m. to Sunday at 2:00 p.m. (see Shink v Shink, 140 AD2d 506, 508). However, contrary to the defendant's contention, there was a sound and substantial basis in the record to support the court's determination that it was in the two youngest children's best interests to make parental access contingent upon the defendant having in place any necessary ancillary support, aid, and services that the two youngest children require while in his care, as the youngest child requires constant supervision and assistance with even the most basic needs, and the other child, while requiring less direct care, also has significant special needs.
Contrary to the defendant's contention, the holiday and birthday parental access schedule is supported by the record, which was replete with evidence that the defendant did not celebrate holidays and birthdays. Despite his assertion that he would do so in the future, the Supreme Court did not credit this assertion, and the record reveals no basis to disturb the court's credibility determination in this regard.
Contrary to the defendant's contention, the Supreme Court did not improvidently exercise its discretion in denying his request for maintenance. " The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts'" (Papakonstantis v Papakonstantis, 163 AD3d 839, 840, quoting Repetti v Repetti, 147 AD3d 1094, 1096). The function of maintenance is "to allow the recipient spouse an opportunity to achieve economic independence" (Papakonstantis v Papakonstantis, 163 AD3d at 841). "[F]actors to be considered in [the determination of] a maintenance award are, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (DiLascio v DiLascio, 170 AD3d 804, 807 [internal quotation marks omitted]; see Castello v Castello, 144 AD3d 723, 726; see also Domestic Relations Law former § 236[B][6][a]). In light of the defendant's earning history and capacity and the distribution of marital property, we decline to disturb the court's determination declining to award the defendant maintenance (see Horn v Horn, 145 AD3d 666, 668; Heymann v [*4]Heymann, 102 AD3d 832, 834).
We also decline to disturb the Supreme Court's determination directing the defendant to pay the sum of $1,425 per month in basic child support and 34% of certain add-on expenses. " A court need not rely upon a party's own account of his [or her] finances, but may impute income based upon the party's past income or demonstrated future potential earnings'" (Nerayoff v Rokhsar, 168 AD3d 1071, 1077, quoting Steinberg v Steinberg, 59 AD3d 702, 705). While a court is " afforded considerable discretion in determining whether to impute income to a parent, a determination to impute income will be rejected where the amount imputed was not supported by the record, or the imputation was an improvident exercise of discretion'" (Matter of Shetsova v Paderno, 84 AD3d 1095, 1096, quoting Matter of Ambrose v Felice, 45 AD3d 581, 582). Here, it was not an improvident exercise of discretion for the court to impute $130,000 in annual income to the defendant based upon his prior earnings and his admission that he did not attempt to find equivalent work after his employment was terminated. Moreover, we agree with the court's determination to calculate child support based on the plaintiff's 2016 income information, as her income for 2017 had not yet been completely determined at the time of the trial (see Domestic Relations Law § 240[1-b][b][5][i]; Matter of Peddycoart v MacKay, 145 AD3d 1081, 1082).
"In determining parental income under the [Child Support Standards Act], the court must begin with the parent's gross (total) income as should have been or should be reported in the most recent federal income tax return'" (Matter of Peddycoart v MacKay, 145 AD3d at 1082, quoting Family Ct Act § 413[1][b][5][i]). "When the parties' combined income is more than the statutory cap . . . [,] the court has the discretion to cap the support obligation at an amount based on the statutory cap or order child support above the statutory cap'" (Matter of Spano v Spano, 168 AD3d 857, 859, quoting Matter of Santman v Schonfeldt, 159 AD3d 914, 915). The factors to be considered in making this determination "include a consideration of the financial resources of the custodial and noncusodial parent, and the standard of living the child would have enjoyed if the parties had remained together" (Matter of Peddycoart v MacKay, 145 AD3d at 1084). Here, it was not an improvident exercise of discretion to deny the plaintiff's request to exceed the statutory combined parental income cap to determine the defendant's child support obligation. The Supreme Court considered, inter alia, the financial resources of both parties, taking into account that the plaintiff's income is greater than the defendant's income, most of which is imputed income, that the defendant was denied a maintenance award, and that the children have significant expenses to which the parties must contribute.
We agree with the plaintiff that the Supreme Court should have directed the defendant to pay his pro rata share, 34%, of the children's unreimbursed dental expenses (see Domestic Relations Law § 240[1-b][c][5][v]) and his pro rata share, 34%, of the children's reasonable summer camp expenses, required as and for child care in order for the plaintiff to be employed (see Domestic Relations Law § 240[1-b][c][4]).
Contrary to the defendant's contention, the Supreme Court did not improvidently exercise its discretion in awarding the plaintiff exclusive use and occupancy of the marital residence until the parties' youngest child reached the age of 18. " Exclusive possession of the marital residence is usually granted to the spouse who has custody of the minor children of the marriage'" (Greisman v Greisman, 98 AD3d 1079, 1080, quoting Mosso v Mosso, 84 AD3d 757, 760). "However, the need of the custodial parent to occupy the marital residence is weighed against the financial need of the parties" (Goldblum v Goldblum, 301 AD2d 567, 568). Here, the plaintiff has sole custody of the minor children, two of whom have special needs and require stability. Furthermore, the defendant has failed to establish an immediate need for the proceeds of the marital residence, especially in light of the equitable distribution award.
"[A] trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Bernholc v Bornstein, 72 AD3d 625, 628; see Michaelessi v Michaelessi, 59 AD3d 688, 689). Here, we agree with the Supreme Court's [*5]determination to award the defendant 40% of the value of the marital residence. Notwithstanding the long duration of the parties' marriage, there is no requirement that the distribution of each item of property be made on an equal basis (see DeSouza-Brown v Brown, 71 AD3d 946, 946-947). Under the totality of the circumstances, including, inter alia, the parties' unequal financial contributions to the marital residence, which included the complete reconstruction of the marital residence by the plaintiff's father's company and the repayment of the home equity loan by the plaintiff's parents, the award of 40% of the value of the marital residence to the defendant was a provident exercise of discretion (see Klauer v Abeliovich, 149 AD3d 617, 622-623; Bernholc v Bornstein, 72 AD3d at 628; DeSouza-Brown v Brown, 71 AD3d at 946-947).
We also agree with the Supreme Court's determination to award the defendant 50% of the value of the parties' vacation home in Pennsylvania. The evidence supports a determination that the funds used to purchase the vacation home were marital, and that an award of 50% of its value to the defendant was not an improvident exercise of discretion (see Domestic Relations Law § 236[B][5][c]; Spencer-Forrest v Forrest, 159 AD3d 762).
However, to the extent that the defendant will not be receiving the proceeds of the marital residence until the parties' youngest child attains the age of 18, which is approximately 10 years after the trial of this matter, the Supreme Court should not have directed that the defendant's 40% share of the marital residence be based upon the stipulated value of the marital residence of $1,200,000. At the time the parties' youngest child attains the age of 18, the plaintiff should have the option of either selling the marital residence and paying the defendant 40% of the net proceeds of the sale after payment of usual and customary closing costs, or purchasing the defendant's share of the marital residence by paying him 40% of the fair market value of the residence at that time.
Contrary to the defendant's contention, it was not an improvident exercise of discretion for the Supreme Court to deny his request for a credit for monies spent down from the parties' investment accounts during the pendency of the action. "The party alleging that his or her spouse has engaged in wasteful dissipation of marital assets bears the burden of proving such waste by a preponderance of the evidence" (Epstein v Messner, 73 AD3d 843, 846; see Raynor v Raynor, 68 AD3d 835, 838). Here, both parties admitted that the plaintiff used these accounts to pay marital expenses, and the defendant was unable to point to any exorbitant spending on the part of the plaintiff.
"An award of counsel fees pursuant to Domestic Relations Law § 237(a) is entrusted to the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case" (Lugo v Torres, 174 AD3d 594, 594-595). "In determining whether to award counsel fees, the court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (id. at 595). "[T]here is a statutory rebuttable presumption that counsel fees shall be awarded to the less monied spouse'" (Carlucci v Carlucci, 174 AD3d 495, 496, quoting Domestic Relations Law § 237[a]). Here, considering the equities and circumstances of the case, including the disparity in the parties' income, the Supreme Court providently exercised its discretion in awarding counsel fees to the defendant in the sum of $30,551.95, representing 65% of his outstanding fees. This award of counsel fees was made pursuant to the amended decision entered October 30, 2018. Since the amended decision is not reflected in the judgment of divorce, the judgment of divorce should be modified to incorporate the counsel fees award determined in the amended decision.
The Supreme Court did not improvidently exercise its discretion in granting the plaintiff's motion pursuant to CPLR 4404(b), as the plaintiff demonstrated good cause for her brief delay in moving for such relief (see Ehrman v Ehrman, 67 AD3d 955, 956).
The parties' remaining contentions are without merit.
MASTRO, J.P., CHAMBERS, IANNACCI and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court