Marchese v Marchese (2020 NY Slip Op 03655)





Marchese v Marchese


2020 NY Slip Op 03655


Decided on July 1, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 1, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
ROBERT J. MILLER
JOSEPH J. MALTESE
BETSY BARROS, JJ.


2018-02024
 (Index No. 203304/14)

[*1]Danauta Marchese, appellant,
v
Michael Marchese, respondent.


Bender & Rosenthal LLP, New York, NY (Susan L. Bender, Michael T. Etzrodt, and Lauren Crane of counsel), for appellant.
Blank Rome LLP, New York, NY (Donald Frank and Sydney Lim of counsel), for respondent.



DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals from a judgment of divorce of the Supreme Court, Nassau County (Stacy D. Bennett, J.), entered December 14, 2017. The judgment of divorce, insofar as appealed from, upon an order of the same court dated October 2, 2017, inter alia, granting that branch of the plaintiff's motion which was for an award of counsel fees to the extent of awarding her the sum of only $100,000 and denying that branch of the plaintiff's motion which was for an award of expert fees, inter alia, failed to award the plaintiff expert fees and awarded the plaintiff counsel fees in the sum of only $100,000.
ORDERED that the judgment of divorce is modified, on the facts and in the exercise of discretion, (1) by adding a provision thereto awarding the plaintiff expert fees in the sum of $71,473.60, and (2) by deleting the provision thereof awarding the plaintiff counsel fees in the sum of $100,000, and substituting therefor a provision awarding the plaintiff counsel fees in the sum of $481,188.15; as so modified, the judgment is affirmed insofar as appealed from, with costs to the plaintiff, and the order is modified accordingly.
The parties married in 1996 and have one child, born in 1997. The plaintiff commenced this action for a divorce and ancillary relief in November 2014. The plaintiff, born in 1954, suffers from a form of incurable blood cancer and is not employable and has virtually no income of her own, although she held certain cash and cash equivalents valued at approximately $720,000 as of the commencement of the action. The defendant owns several businesses valued at approximately $7.3 million and had an average annual income from 2010 to 2015 of $2,187,457.
This matrimonial action was extensively litigated for more than two years. A settlement was reached on the morning of the first day of trial, and the parties executed a settlement agreement several days later on February 26, 2017. The overall value of plaintiff's agreed-upon equitable distribution was over $4.6 million, inclusive of the value of the former marital residence, valued at $500,000, with the plaintiff to immediately receive approximately $2.1 million in liquid funds, including investment and retirement accounts, and thereafter receiving a distributive award [*2]of approximately $2 million paid out in equal installments over 10 years. The defendant's equitable distribution was approximately $10 million, consisting of the parties' former second home, valued at over $1.5 million, the entirety of the business interests, valued at approximately $7.3 million, certain bank, investment, and retirement accounts, and a boat. The defendant agreed to pay taxable maintenance to the plaintiff of $10,000 per month through February 2020, $15,000 per month thereafter through February 2024, and $20,000 per month thereafter through February 28, 2027, at which time all maintenance would terminate. The agreement settled the entirety of the matter except for issues regarding counsel and expert fees. The agreement stated that, "[a]ll issues regarding counsel and expert fees arising out of the Divorce Action shall be submitted at the conclusion of this matter, on papers, via motion, on a briefing schedule to be determined by the court."
As of the time of the execution of the settlement agreement, the plaintiff had incurred counsel fees of approximately $516,000, of which the defendant had paid $65,000 by court order. In contrast, the defendant incurred counsel fees of more than $900,000, nearly doubling the fees incurred by the plaintiff. The defendant had also paid more than $100,000 to a court-appointed expert valuation firm. The plaintiff had retained her own expert valuation firm and the defendant had paid that firm $25,000.
The plaintiff moved for an award of counsel fees, seeking to hold the defendant responsible for all of her counsel fees, including the fees incurred in connection with her application for fees. The plaintiff also sought to hold the defendant responsible for all of the fees of her own expert as well as for the fees of the court-appointed expert. The defendant opposed the motion and cross-moved to require the plaintiff to reimburse him $52,142.43, representing 50% of the fees he paid to the court-appointed expert valuation firm, and reimburse him for all fees he had paid pursuant to pendente lite orders on account of the plaintiff's legal and expert fees. In an order dated October 2, 2017, the Supreme Court granted the plaintiff's motion to the extent of awarding her counsel fees in the sum of only $100,000 and failed to award her any expert fees. The court, in effect, denied the defendant's cross motion in its entirety. On December 14, 2017, a judgment of divorce was entered upon the order. The plaintiff appeals and we modify.
We deal first with the issue of expert fees. By order dated January 16, 2015, resulting from a conference, the Supreme Court appointed an expert valuation firm to value the defendant's business interests and estimate the available income stream from each entity. The defendant contended that his business interests were acquired prior to the marriage and by gift and were his separate property. The January 2015 order required the appointed expert valuation firm to report on the enhanced earnings of the defendant's businesses. The defendant was required to pay 100% of the fees of the appointed firm, subject to later reallocation. In August 2016, the court-appointed valuation firm released its report. A few months later, the plaintiff retained her own expert valuation firm, Financial Research Associates (hereinafter FRA), to review the court-appointed firm's report and to provide a lifestyle analysis. FRA produced the lifestyle analysis and also produced a report in January 2017 that, inter alia, asserted that an increase in the defendant's share of one of the businesses that occurred during the marriage and pursuant to a redemption agreement did not come about by gift or inheritance or by use of pre-marital property. FRA also opined that certain adjustments should be made to the court-appointed firm's findings that would result in an increase in the court-appointed firm's valuation of the defendant's business interests by approximately $564,000. Shortly thereafter, as the result of a conference call between counsel and the valuation experts, the court-appointed firm agreed to adjust the values reflected in its report and the parties subsequently entered into a stipulation as to the values to be assigned to the defendant's business interests.
In seeking to hold the defendant responsible for the entirety of FRA's fees, the plaintiff asserted that FRA's work resulted in a $534,000 stipulated increase in the value of the defendant's businesses and that FRA's lifestyle analysis contributed to a dramatic increase in the amount of maintenance that the defendant was willing to pay, contrasting the $1.8 million in total support over 10 years agreed to by the defendant in the settlement agreement with the settlement proposal made by the defendant prior to the FRA lifestyle analysis report. In opposition, the defendant asserted that FRA's lifestyle analysis was flawed. Notably, however, the defendant did [*3]not take issue with FRA's valuation report and, in particular, the defendant did not refute the plaintiff's assertion that FRA's report had led to an increase in the stipulated values of the defendant's businesses. Moreover, the defendant specifically acknowledged that the plaintiff had succeeded in having the business interests acquired by the defendant through the redemption agreement added to the marital estate, an accomplishment attributable to FRA's work.
The award of expert witness fees in a matrimonial action is generally left to the sound discretion of the trial court (see Carlin v Carlin, 120 AD3d 734). In this case, however, the denial of the plaintiff's motion to compel the defendant to pay for the entirety of FRA's fees was not a sound exercise of discretion. The defendant's business interests were complicated and it was the plaintiff's burden, as the non-titled spouse, to establish the extent to which these business interests constituted marital property and their value (see Domestic Relations Law § 236[B][1][d][3]; Hartog v Hartog, 85 NY2d 36, 46-48; Lestz v Lestz, 155 AD3d 857, 858). While the Supreme Court appointed a qualified expert firm to value the defendant's business interests, the record reflects that the plaintiff had valid reasons to question aspects of the court-appointed expert's report as well as to obtain a lifestyle analysis. Given the complexity of the issues, the burden of proof which was upon the plaintiff, and the relative financial positions of the parties (see Altenkirch v Altenkirch, 225 AD2d 725), and the quality and result of the work undertaken by FRA, the plaintiff's submissions warrant an award to her in the sum of $71,473.60 to pay for the balance of the fees attributable to FRA's services. In reaching this determination, we note that it is undisputed that FRA's work at the eve of trial led to significant increases in the valuation of the marital estate and facilitated the settlement of the matter.
To the extent that the Supreme Court's order may be read as finding that the plaintiff had engaged in conduct which exacerbated the expert fees, such a finding is wholly unsupported by this record. The court noted that the plaintiff had retained a second expert to assist her in this case. However, that person was an accountant who was paid $9,105 and, as the plaintiff conceded, failed to provide any tangible or useful work product. The plaintiff did not seek an award for this person's services and neither the defendant nor his counsel mentioned his name in their opposition papers, much less contend that he had somehow caused the fees of the court-appointed firm to be unnecessarily increased. While FRA's work undoubtedly led to the court-appointed firm having to undertake additional work and make revisions to their report, it is undisputed that FRA's critiques were meritorious and neither the plaintiff nor FRA should be faulted or penalized for pointing out the issues with the court-appointed firm's report.
We now turn to the issue of counsel fees. In awarding the plaintiff only a portion of the fees requested, the Supreme Court considered that the defendant was the monied spouse. However, the court weighed against the plaintiff its perception that she had financial resources of her own, that she had prolonged the litigation, and that she had exacerbated her own fees and expenses as well as those of the defendant. The court's findings are not supported by the record and the court's conclusion as to the allocation of responsibility for the plaintiff's counsel fees and expenses was, in our view, an improvident exercise of discretion.
By statute, there is "a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237[a]). While the statute creates a presumption that counsel fees are to be awarded to the less affluent spouse, it does not address the amount of fees to be awarded. In this case, the defendant did not rebut the presumption in favor of an award of counsel fees to the plaintiff. The Supreme Court followed the letter of the law by making an award but its award was, under the circumstances, inadequate.
The decision to award an attorney's fee in a matrimonial action lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as that of the trial court (see O'Brien v O'Brien, 66 NY2d 576, 590; Tarantina v Gitelman, 136 AD3d 663). In exercising that discretion, the court must consider the financial circumstances of the parties and the circumstances of the case as a whole, including the relative merits of the parties' positions and whether either party has delayed the proceedings or engaged in unnecessary litigation (see Piccininni v Piccininni, 176 AD3d 880, 881; Jankovic v Jankovic, 170 [*4]AD3d 1134; Guzzo v Guzzo, 110 AD3d 765)
Here, the Supreme Court gave undue weight to the financial resources available to the plaintiff. A less-monied spouse should not be expected to exhaust all, or a large portion, of available finite resources available, particularly where the more affluent spouse is able to pay his or her own legal fees without any substantial lifestyle impact (see Prichep v Prichep, 52 AD3d 61, 66). The plaintiff was approximately 63 years old at the time of the proceedings below, had a debilitating medical condition, and was unable to work. In contrast, the defendant was 48 years old, in good health, and had a proven track record of average annual earnings in excess of $2 million. Of the plaintiff's equitable distribution, only approximately ½ was in the form of liquid assets, and her overall share of the distributed assets was significantly less than that of the defendant. The plaintiff's taxable maintenance is modest in comparison with the defendant's earnings. Given the significant disparity between the parties' assets and incomes, as well as the significant disparity in their ages and health conditions, it is the defendant who is in the superior position to bear the expenses of this litigation.
We do not find in this record support for the Supreme Court's conclusion that the plaintiff engaged in conduct that prolonged the litigation and exacerbated the fees of both parties. The court's conclusion was predicted upon the court's observation that the plaintiff had engaged in meritless motion practice. However, the record establishes that the plaintiff did not make any frivolous motions and the motions that she did make resulted in her being awarded significant relief, albeit less than what she had sought. The defendant, for instance, concedes that, after the commencement of this action, he terminated the plaintiff's employment with one of his companies. This led to a motion by the plaintiff for pendente lite relief, including temporary maintenance and child support, which was granted in significant respects. Thereafter, disputes arose as to whether the defendant was in compliance with his court-imposed obligations, partly because the defendant declined to inform the plaintiff as to whether he had paid certain bills and partly because the defendant determined that certain bills were not his obligation under the court order. Rather than resolving these relatively small issues by a person-to-person dialogue, there ensued an exchange of emails and correspondence in which counsel asserted their maximum positions, leading to another motion by the plaintiff, which culminated in an order clarifying the defendant's obligations and directing him to provide the plaintiff with proof of timely payment of those obligations. Additional motion practice was occasioned by the defendant's refusal to contribute to the plaintiff's counsel fees, despite his far superior economic standing and his own retention of preeminent and expensive matrimonial attorneys. It developed that the defendant had not disclosed on his net worth statement a $250,000 investment in a business venture, resulting in motion practice which ended in an order authorizing the court-appointed valuation firm to value this asset and the award to the plaintiff of $45,000 in interim counsel fees. Thus, the record does not support the court's view that the plaintiff had engendered wasteful motion practice and the record leads us to find that, to the contrary, the defendant engaged in obstructive and dilatory conduct throughout the litigation which triggered the necessity for both parties to incur counsel fees that could have been avoided.
The defendant argues, and the Supreme Court agreed, that the plaintiff caused delay, and increased the defendant's counsel fees, by twice changing attorneys. On appeal, the plaintiff argues that it was error for the court to have given any consideration to her changes in counsel. The plaintiff asserts that by entering into the agreement to have the issue of counsel fees determined on papers, rather than at a hearing, the defendant waived any objection to the reasonableness of the fees charged to the plaintiff. We disagree with the plaintiff on this point for two distinct reasons. First, the settlement agreement provides only that the issues relating to counsel fees would be determined on the basis of papers, i.e., written submissions, as opposed to a hearing, which would have been otherwise been required (see O'Connor v O'Connor, 89 AD3d 703, 704). The settlement agreement does not, however, limit the requests or contentions that could be advanced by the parties in their papers; indeed, the agreement specified that "[a]ll issues" regarding counsel and expert fees would be submitted to, and determined by, the court. Second, the plaintiff's argument is based upon a misapprehension of the court's determination. The court did not decide that the plaintiff's fees were unreasonably increased by her changes of counsel; the court determined that the plaintiff's changes of counsel caused the defendant's fees to be unnecessarily increased.
Nevertheless, we conclude that the Supreme Court's determination in this respect was improvident. While the defendant, in opposing the fee application, assailed the plaintiff's first and second attorneys for causing unnecessary work, neither he nor his counsel attempted to quantify the amount of time allegedly spent unnecessarily by the plaintiff's former attorneys or even the amount of additional time caused to be expended by his counsel. The court stated only that the plaintiff substituted her second attorney for her present attorney on the eve of trial in October 2016. However, neither the court nor the defendant asserted that the trial was delayed or adjourned because of the substitution of counsel. We note that on December 2, 2016, several months after the putative trial date, the court granted the plaintiff's motion to authorize the court-appointed valuation firm to value the recently discovered business interest of the defendant. While the court denied that branch of the plaintiff's motion which was to strike the note of issue, the court stated that the note of issue provided that it was subject to completion of the court-appointed firm's report and other discovery. Thus, the record reflects that the delay in the trial was attributable to the belated discovery of a previously undisclosed asset of the defendant, not the plaintiff's change in counsel.
We also note that, after the plaintiff's present counsel was retained, FRA was engaged to assist the plaintiff and the matter was settled on much more favorable terms to the plaintiff than the defendant had previously proposed.
While both parties incurred significant counsel fees in this action, we have taken into consideration that the defendant, throughout the matter, was represented by a prominent and expensive matrimonial law firm and the defendant's counsel fees are substantially greater than those of the plaintiff. Taking into account the parties' financial circumstances, ages, health, and incomes, as well as the merits of the parties' respective contentions on the underlying issues, and the terms of the settlement agreed to, we conclude that the defendant should be responsible for the balance of the plaintiff's counsel fees and expenses, net of his prior payments, in connection with the underlying litigation, which amounts to $451,188.15 (see Johnson v Chapin, 12 NY3d 461, 464; Carlucci v Carlucci, 174 AD3d 495, 496; Weidman v Weidman, 162 AD3d 720, 726; Straub v Straub, 155 AD3d 919, 920).
In addition, counsel fees may be awarded for services rendered in pursuing a counsel fee application (see O'Shea v O'Shea, 93 NY2d 187, 193-194). The purpose for such award is to further the objectives of litigational parity and to prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance or by prolonging the litigation (see id. at 193). In the context of this case, an award of counsel fees for the services involved in making an award of counsel fees is appropriate in light of the defendant's persistent refusal to tender a meaningful contribution to the plaintiff's counsel fee obligations. We also consider the defendant's making of a cross motion that sought to impose on the plaintiff responsibility for 50% of the fees of the court-appointed valuation firm and 100% of her own fees. The cross motion can only be viewed as retaliatory. Taking into account all of the relevant circumstances, we conclude that of the amount requested by the plaintiff for the services involved in pursuit of her own application and in defense of the defendant's cross motion, the defendant should be responsible for $30,000.
Accordingly, we award the plaintiff the total of $481,188.15 as and for an award for counsel fees.
SCHEINKMAN, P.J., MILLER, MALTESE and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court