DiNapoli v DiNapoli (2021 NY Slip Op 07539)





DiNapoli v DiNapoli


2021 NY Slip Op 07539


Decided on December 29, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 29, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
BETSY BARROS
VALERIE BRATHWAITE NELSON
PAUL WOOTEN, JJ.


2020-07049
2021-00123
 (Index No. 6474/16)

[*1]Tracey M. DiNapoli, plaintiff-appellant,
v
Ryan F. DiNapoli, respondent; Noa D. (Anonymous), et al., nonparty-appellants.


Quatela Chimeri PLLC, Hauppauge, NY (Christopher J. Chimeri, Joseph Covello, and Sophia Arzoumanidis of counsel), for plaintiff-appellant.
Rachel A. Camillery, West Islip, NY, attorney for the children, the nonparty-appellants.



DECISION & ORDER
In a matrimonial action in which the parties were divorced by judgment entered January 7, 2019, (1) the plaintiff appeals, and the children separately appeal, from an order of the Supreme Court, Suffolk County (Cheryl A. Joseph, J.), dated September 16, 2020, and (2) the plaintiff appeals from an order of the same court dated December 7, 2020. The order dated September 16, 2020, insofar as appealed from, upon a decision of the same court dated August 11, 2020, made after a hearing, granted the defendant's motion to modify the custody provisions of the parties' stipulation of settlement, which was incorporated but not merged into the judgment of divorce, so as to award him sole residential custody of the subject children, and awarded the defendant final decision-making authority. The order dated December 7, 2020, granted the defendant's cross motion for an award of an attorney's fee to the extent of awarding him the sum of $25,000. By decision and order on motion dated October 23, 2020, this Court, inter alia, granted that branch of the plaintiff's motion which was for a stay of enforcement of the order dated September 16, 2020, pending hearing and determination of the appeals.
ORDERED that on the Court's own motion, the notices of appeal from so much of the order dated September 16, 2020, as awarded the defendant final decision-making authority are deemed to be applications for leave to appeal from that portion of the order and leave to appeal is granted (see CPLR 5701[c]); and it is further,
ORDERED that the order dated September 16, 2020, is reversed insofar as appealed from, on the law and the facts, and the defendant's motion to modify the custody provisions of the parties' stipulation of settlement so as to award him sole residential custody of the subject children is denied; and it is further,
ORDERED that the order dated December 7, 2020, is reversed, on the law and in the exercise of discretion, and the defendant's cross motion for an award of an attorney's fee is denied; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
The parties were married in April 2004, and have two children together. In 2016, the plaintiff (hereinafter the mother) commenced an action for a divorce and ancillary relief. Pursuant to a stipulation of settlement, which was incorporated but not merged into a judgment of divorce entered January 7, 2019, the parties agreed to share joint legal custody of the children, with final decision-making authority to the mother, sole residential custody to the mother, and certain parenting time to the defendant (hereinafter the father). In March 2019, the father moved to modify the custody provisions of the stipulation of settlement so as to award him sole residential custody of the children based on the mother's alleged parental alienation. In an order dated September 16, 2020, made after a hearing, the Supreme Court, inter alia, granted the father's motion to modify the custody provisions of the stipulation of settlement so as to award him sole residential custody of the children, awarded him final decision-making authority, and directed that the mother have no contact with the children for 30 days, with certain parenting time to the mother thereafter. The mother and the children separately appeal.
In August 2020, the father cross-moved for an award of an attorney's fee. In an order dated December 7, 2020, the Supreme Court granted the father's cross motion to the extent of awarding him an attorney's fee in the sum of $25,000. The mother also appeals from that order.
"To modify an existing custody arrangement, there must be a showing of a change of circumstances such that modification is required to protect the best interests of the child" (Matter of Zeis v Slater, 57 AD3d 793, 793; see Matter of Molinari v Tuthill, 59 AD3d 722; Matter of Manfredo v Manfredo, 53 AD3d 498). "The factors to be considered include whether the alleged change in circumstances indicates that one of the parties is unfit, the nature and quality of the relationships between the child and the parties, the ability of each parent to provide for the child's emotional and intellectual development, and the effect of awarding custody to one parent on the child's relationship with the other parent" (Matter of Vargas v Gutierrez, 155 AD3d 751, 752; see Eschbach v Eschbach, 56 NY2d 167, 171-173). "'Since weighing the factors relevant to any custody determination requires an evaluation of the credibility and sincerity of the parties involved, the hearing court's findings are accorded deference'" (Matter of Vargas v Gutierrez, 155 AD3d at 753, quoting Matter of Jackson v Coleman, 94 AD3d 762, 763). Nevertheless, "this Court's authority in custody determinations is as broad as that of the hearing court, and while we are mindful that the hearing court has an advantage in being able to observe the demeanor and assess the credibility of witnesses, the hearing court's determination will not be affirmed if it lacks a sound and substantial basis in the record" (Matter of Follini v Currie, 176 AD3d 1203, 1205 [citation omitted]; see Matter of Nevarez v Pina, 154 AD3d 854, 855; Matter of Caruso v Cruz, 114 AD3d 769, 772).
Here, the Supreme Court's determinations to grant the father's motion so as to award him sole residential custody of the children and to award the father final decision-making authority lack a sound and substantial basis in the record. At the hearing, the father testified that he had regular visits with the children during the pendency of the divorce action until June 2018 when the visits ceased due to the issuance of an order of protection against him. The father testified that as early as September 2017, the parties' older child, then 12 years old, cried every time he picked her up for a visit. The father stated that as of the time of the hearing, he had "little or no relationship" with the children, which he claimed was "100 percent" the fault of the mother. However, the record reflects that the poor state of the relationship between the children and the father is due, in significant part, to the father's own conduct, including that the father was "dismissive" of the children's feelings during his therapy sessions with them (see Matter of Sanders v Jaco, 148 AD3d 812, 813-814; Matter of Roelofsen v Tiberie, 64 AD3d 603, 604). Further, despite the father's claims of parental alienation, the father acknowledged that in response to the parties' older child crying when the father picked her up for visits, the mother tried to encourage that child to stop crying and to go with the father on multiple occasions. Moreover, James Sellars, who supervised the therapy sessions, testified that the mother expressed that she wanted to "do whatever it took to have [the father] back in the [children's] lives on a regular basis," and Sellars opined that "[the mother] did everything in her power . . . to encourage [the children] to verbally participate" in therapy sessions with the father.
Furthermore, the court-appointed forensic examiner, K. Daniel O'Leary, reported based on his interviews with the children that they are "fearful of [the father]" and "do not want to have anything to do with [him]." O'Leary concluded that while "both parents have engaged in behavior that has adversely affected the children's attitudes and behavior toward their father," it was not "psychologically appropriate" for the children to award residential custody to the father. "[T]he recommendations of court-appointed experts may be considered in making custody determinations, and such recommendations are entitled to some weight, unless the opinion is contradicted by the record" (Matter of Detwiler v Detwiler, 145 AD3d 778, 780). Here, O'Leary's conclusion that it would not be appropriate to award residential custody of the children to the father is amply supported by the record, which reflects that the children were unwilling to even say "hello or goodbye" to the father or maintain eye contact with him during therapy sessions.
In addition, "while not necessarily determinative, [a] child's expressed preference is some indication of what is in his or her best interests and, in weighing that factor, a court must consider the age and maturity of the child" (Matter of Nevarez v Pina, 154 AD3d at 855). Here, the wishes of the children, who were 12 and 15 years old, respectively, as of the conclusion of the hearing, were entitled to some weight. The record reflects that the children were "visibly upset and crying" when the Supreme Court determined that the father is entitled to sole residential custody, and the attorney for the children represented that the parties' older child was "threatening to harm herself" if compelled to reside with the father. Under the circumstances, the court erred in failing to afford due consideration to the wishes of the children, who expressed an unequivocal desire to live with the mother (see Matter of Lopez v Reyes, 195 AD3d 846, 848).
Accordingly, the Supreme Court erred by granting the father's motion to modify the custody provisions of the parties' stipulation of settlement so as to award him sole residential custody of the children and by awarding the father final decision-making authority.
There is a statutory "rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237[a]; see Piccininni v Piccininni, 176 AD3d 880, 881). "'The decision to award an attorney's fee in a matrimonial action lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as that of the trial court'" (Turisse v Turisse, 194 AD3d 1090, 1093, quoting Marchese v Marchese, 185 AD3d 571, 576). "In exercising that discretion, the court must consider the financial circumstances of the parties and the circumstances of the case as a whole, including the relative merits of the parties' positions and whether either party has delayed the proceedings or engaged in unnecessary litigation" (Piccininni v Piccininni, 176 AD3d at 881).
Here, under the circumstances of this case, including the merits of the parties' positions and that the mother was the less-monied party, the Supreme Court improvidently exercised its discretion in granting the father's cross motion for an award of an attorney's fee (see Turisse v Turisse, 194 AD3d at 1093).
MILLER, J.P., BARROS, BRATHWAITE NELSON and WOOTEN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court