Wen Wen Sun v Ti Zhou (2025 NY Slip Op 06217)

Wen Wen Sun v Ti Zhou

2025 NY Slip Op 06217

Decided on November 12, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 12, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
JANICE A. TAYLOR
ELENA GOLDBERG VELAZQUEZ, JJ.

2021-01017
 (Index No. 200029/17)

[*1]Wen Wen Sun, appellant-respondent, 
v
Ti Zhou, respondent-appellant.

Barket Epstein Kearon Aldea & Loturco, LLP, Garden City, NY (Alexander Klein and Donna Aldea of counsel), for appellant-respondent.
Dikman & Dikman, Lake Success, NY (David S. Dikman of counsel), for respondent-appellant.

DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals, and the defendant cross-appeals, from stated portions of a judgment of divorce of the Supreme Court, Nassau County (Helen Voutsinas, J.), entered January 13, 2021. The judgment of divorce, insofar as appealed from, upon an amended decision of the same court dated January 30, 2020, made after a nonjury trial, inter alia, (1) awarded the defendant a separate property credit in the sum of $2,117,650 with respect to the purchase of the marital residence, (2) allocated selling and closing costs associated with the sale of the martial residence such that the plaintiff would bear 45% of those costs upon the sale, (3) awarded the plaintiff counsel fees in the sum of only $50,000, and (4) failed to equitably distribute a New York 529 College Savings Plan account for the parties' child. The judgment of divorce, insofar as cross-appealed from, upon the amended decision, inter alia, (1) awarded the plaintiff maintenance in the sum of $4,000 per month for 17 months and child support in the sum of $3,500 per month, (2) denied the defendant's applications for separate property credits with respect to certain investment and brokerage accounts, (3) valued the defendant's interest in a hedge fund investment company as of the commencement date of this action at the sum of $607,000 and awarded the plaintiff 35% thereof, (4) directed the plaintiff to pay 35.51% and the defendant to pay 64.49% of the child's undergraduate tuition up to a SUNY cap until emancipation if he should attend college, and (5) directed the defendant to pay 64.49% of the carrying charges on the marital residence pending its sale.
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof directing the plaintiff to pay 35.51% and the defendant to pay 64.49% of the child's undergraduate tuition up to a SUNY cap until emancipation if he should attend college, and (2) by adding thereto a provision directing that the New York 529 College Savings Plan account for the child, account number 
xxxxxx198-01, is marital property, with the parties sharing an equal interest therein; as so modified, the judgment of divorce is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The parties were married on March 23, 2009, and have one child. On January 5, 2017, the plaintiff commenced this action for a divorce and ancillary relief. After a nonjury trial, the [*2]Supreme Court issued an amended decision dated January 30, 2020, and a judgment of divorce entered January 13, 2021. The judgment of divorce, inter alia, directed the sale of the marital residence and awarded the defendant a separate property credit in the sum of $2,117,650 with respect to the purchase of the marital residence, valued the defendant's interest in Ruyi Capital, a hedge fund investment company, at the sum of $607,000 as of the commencement date of this action and awarded the plaintiff 35% thereof, equitably distributed certain financial accounts, awarded the plaintiff maintenance in the sum of $4,000 per month for 17 months and child support in the sum of $3,500 per month, directed the parties to pay their pro rata share of the child's undergraduate tuition up to a SUNY cap until emancipation if he should attend college, and directed the defendant to pay 64.49% of carrying charges on the marital residence pending its sale. The judgment of divorce did not equitably distribute a New York 529 College Savings Plan account for the child. The plaintiff appeals, and the defendant cross-appeals, from stated portions of the judgment of divorce.
"Equitable distribution presents issues of fact to be resolved by the trial court and should not be disturbed on appeal unless shown to be an improvident exercise of discretion" (Santamaria v Santamaria, 177 AD3d 802, 804 [internal quotation marks omitted]). "However, in reviewing a determination made after a nonjury trial, the power of this Court is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, bearing in mind that in a close case, the trial court had the advantage of seeing the witnesses and hearing the testimony" (Silvers v Silvers, 197 AD3d 1195, 1197).
"Where a party contributes his or her separate property toward the purchase of a marital asset, such as a marital residence, the party should be given a credit for the amount so contributed prior to the equitable division of the asset" (Sinnott v Sinnott, 194 AD3d 868, 871 [internal quotation marks omitted]; see Domestic Relations Law § 236[B][1][d][1]; Fields v Fields, 15 NY3d 158, 167-168; Westreich v Westreich, 169 AD3d 972, 977).
Here, contrary to the plaintiff's contention, the Supreme Court providently exercised its discretion in awarding the defendant a separate property credit in the sum of $2,117,650 with respect to the purchase of the marital residence (see Sinnott v Sinnott, 194 AD3d at 871; Westreich v Westreich, 169 AD3d at 977). The record demonstrates that the balance due at closing was funded with monies gifted to the defendant from his parents, traced through the defendant's individual accounts, and used to satisfy the closing obligations. Similarly, the court providently exercised its discretion in directing that brokerage commissions and closing costs be deducted from the gross sale price of the marital residence before applying the separate property credit in favor of the defendant and distributing the remaining equity between the parties (see Torkin v Susac, 236 AD3d 1082, 1084; Marino v Marino, 183 AD3d 813, 820). Furthermore, contrary to the defendant's contention, the court did not improvidently exercise its discretion in directing the defendant to pay 64.49% of the carrying charges on the marital residence until its sale, because this provision was expressly limited in duration and tracked the parties' Child Support Standards Act pro rata shares, the evidence supported the conclusion that the defendant possessed the financial ability to meet these expenses, and the directive incentivized cooperation among the parties to effectuate a sale (see Burke v Burke, 175 AD3d 458, 460).
"Domestic Relations Law § 236 mandates that the equitable distribution of marital assets be based on the circumstances of the particular case and directs the courts to consider a number of statutory factors" (Sufia v Khalique, 189 AD3d 1499, 1500 [internal quotation marks omitted]; see Domestic Relations Law § 236[B][5][c], [d]). "A trial court is vested with broad discretion in making an equitable distribution of marital property, and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (Torkin v Susac, 236 AD3d at 1084 [internal quotation marks omitted]).
Relatedly, the Supreme Court has "broad discretion in selecting the dates for the valuation of marital assets and, depending on the particular circumstances of the case, may appropriately fix different valuation dates for different assets" (Lieberman-Massoni v Massoni, 215 AD3d 656, 658 [internal quotation marks omitted]). "Courts have discretion to value active assets such as a professional practice on the commencement date [of the action], while passive assets such [*3]as securities, which could change in value suddenly based on market fluctuations, may be valued at the date of trial but such formulations should be treated as helpful guideposts and not immutable rules" (id. [internal quotation marks omitted]). "The determination of the factfinder as to the value of a business, if within the range of the testimony presented, will be accorded deference on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques" (id. at 659 [internal quotation marks omitted]).
Here, contrary to the defendant's contention, the Supreme Court providently exercised its discretion in valuing the defendant's interest in Ruyi Capital at the sum of $607,000 as of the commencement date of this action for purposes of equitable distribution, rather than using a near-trial value for Ruyi Capital of $0 (see id. at 658-660; Kurtz v Kurtz, 1 AD3d 214, 215; Lipsky v Lipsky, 276 AD2d 753, 754). The court likewise providently exercised its discretion in awarding the plaintiff 35% of that value in light of the relevant Domestic Relations Law § 236(B) factors, including her indirect and nonremunerated contributions to the marriage (see id. § 236[B][5][c], [d]; Lieberman-Massoni v Massoni, 215 AD3d at 660; Sufia v Khalique, 189 AD3d at 1500).
"Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property" (Torkin v Susac, 236 AD3d at 1086 [internal quotation marks omitted]). "Where separate property has been commingled with marital property, for example in a joint bank account, there is a presumption that the commingled funds constitute marital property" (id. [internal quotation marks omitted]). "To overcome a presumption that commingled property is marital property, the party asserting that the property is separate must establish by clear and convincing evidence that the property originated solely as separate property and [was commingled] only as a matter of convenience, without the intention of creating a beneficial interest" (id. [internal quotation marks omitted]; see Overton v Overton, 118 AD3d 858, 858). Furthermore, "where a determination as to equitable distribution has been made after a nonjury trial, the trial court's assessment of the credibility of witnesses is afforded great weight on appeal" (Glessing v Glessing, 212 AD3d 783, 784).
Here, the Supreme Court properly denied the defendant's application for a separate property credit in the sum of $500,000 with respect to funds given to the defendant by his father (see Torkin v Susac, 236 AD3d at 1086). The record supports the findings that the money was intended for a joint purpose benefitting both parties, namely, establishing permanent residency through an EB-5 Immigrant Investor Program placement, and that the proceeds were later mixed with marital funds and placed in joint title. Further, the defendant did not rebut the commingling presumption through clear and convincing evidence. For similar reasons, the court properly denied the defendant's application for a separate property credit in the sum of $70,000 allegedly traced from a premarital Scottrade account into an Interactive Brokers account (see id.).
"An award of counsel fees is a matter within the sound discretion of the trial court, taking into consideration the equities and circumstances of the particular case, including the parties' respective financial conditions and the relative merit of their positions" (Habib v Habib, 227 AD3d 874, 877; see Domestic Relations Law § 237[a]; Marchese v Marchese, 185 AD3d 571, 575). Here, considering the equities and circumstances of this case, including the parties' respective financial conditions and their conduct, the Supreme Court providently exercised its discretion in awarding the plaintiff counsel fees in the sum of $50,000 (see Domestic Relations Law § 237[a]; Habib v Habib, 227 AD3d at 877).
"The amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its unique facts" (Torkin v Susac, 236 AD3d at 1085 [internal quotation marks omitted]). "A court need not rely upon a party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated future potential earnings" (Sufia v Khalique, 189 AD3d at 1501 [alteration and internal quotation marks omitted]). "Where a party's account is not believable, the court may impute a true or potential income higher than alleged" (id. [internal quotation marks omitted]). "The factfinder's determination concerning the imputation of income to an obligor spouse is almost always based on [*4]the resolution of credibility, and therefore, is given great deference on appeal" (id. [internal quotation marks omitted]).
"Where, as here, the payor's income exceeds the statutory income cap, the court shall determine the guideline amount of postdivorce maintenance by performing the calculations set forth in Domestic Relations Law § 236(B)(6)(c), and then shall determine whether to award additional maintenance for income exceeding the cap by considering the factors set forth in Domestic Relations Law § 236(B)(6)(e)(1) and setting forth the factors it considered" (Torkin v Susac, 236 AD3d at 1084-1085; see Domestic Relations Law § 236[B][6][d]).
Here, the Supreme Court's determination to impute annual income to the defendant in the sum of $300,000 was warranted by the facts. Furthermore, contrary to the defendant's contention, considering the relevant statutory factors, including, among other things, the parties' present and future earning capacities, the standard of living the parties established during the marriage, and the equitable distribution of the marital assets, the court's award of maintenance to the plaintiff in the sum of $4,000 per month for 17 months was a provident exercise of discretion (see Domestic Relations Law § 236[B][6]; Torkin v Susac, 236 AD3d at 1084-1085; Sufia v Khalique, 189 AD3d at 1501).
"The Child Support Standards Act sets forth a formula for calculating child support" (Torkin v Susac, 236 AD3d at 1087; see Domestic Relations Law § 240[1-b]). "In determining the amount of the basic child support obligation, (1) the court must determine the combined parental income; (2) the court must multiply the combined parental income, up to the amount of a statutory cap, by the appropriate child support percentage and prorate such amount in the same proportion as each parent's income is to the combined income; and (3) where the combined parental income exceeds the statutory cap, the court must determine the amount of child support for the amount of the combined parental income in excess of [the] statutory cap through consideration of the factors set forth in Domestic Relations Law § 240(1-b)(f) and/or the child support percentage" (Torkin v Susac, 236 AD3d at 1087; see Domestic Relations Law § 240[1-b][c]). "If the court finds that the noncustodial parent's pro rata share of the basic child support obligation is unjust or inappropriate, it may order the noncustodial parent to pay such amount of child support as it finds just and appropriate and must set forth the factors it considered" (Torkin v Susac, 236 AD3d at 1087; see Domestic Relations Law § 240[1-b][g]).
Here, the Supreme Court properly calculated the parties' presumptive child support obligation up to the statutory cap based on the parties' income, prorated the defendant's share, and then deviated upward with articulated reasons based on its consideration of the family's standard of living during the marriage, the disparity in the parties' incomes, and the defendant's foreign assets (see Domestic Relations Law § 240[1-b]; Torkin v Susac, 236 AD3d at 1087).
However, it was premature for the Supreme Court to direct the defendant to contribute to the college expenses of the parties' child (see Domestic Relations Law § 240[1-b][c][7]; Spinner v Spinner, 188 AD3d 748, 752). "[W]hen college is several years away, and no evidence is presented as to the child's academic interests, ability, possible choice of college, or what his or her expenses might be, a directive compelling [a parent] to pay for those expenses is premature and not supported by the evidence" (Spinner v Spinner, 188 AD3d at 752 [internal quotation marks omitted]). At the time of trial, the parties' child was five years old, and therefore, it was premature for the court to direct the defendant to contribute to the child's college expenses.
Although the Supreme Court did not equitably distribute the New York 529 College Savings Plan account for the child, the parties identified this account as marital property. Accordingly, we modify the judgment of divorce to reflect that this account is marital property and that the parties share an equal interest therein.
The parties' remaining contentions are without merit.
DILLON, J.P., MILLER, TAYLOR and GOLDBERG VELAZQUEZ, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court