[861 NYS2d 88]

Caroline Cimons, Respondent, v Wayne Cimons, Appellant.

Second Department, June 17, 2008

126

**APPEARANCES OF COUNSEL**

*Goldschmidt & Genovese, LLP,* White Plains (*Rhona M. Bork* of counsel), for appellant.

*Candi J. Fulop,* White Plains (*Therese R. Malach* of counsel), for respondent.

**OPINION OF THE COURT**

ANGIOLILLO, J.

This appeal requires us to determine whether a provision in a stipulation settling a divorce action that sets forth the parties' obligations to provide for the future college expenses of their children is subject to the Child Support Standards Act (hereinafter the CSSA) and, if not, whether that provision nonetheless survives a determination that the basic child support provisions of the stipulation violate the CSSA. We hold that, under the circumstances presented here, the obligation to provide for the future college expenses of the children is not part of the parties' basic child support obligation and therefore is not subject to the CSSA requirement that any deviation from statutorily-mandated child support obligations must be recited and explained in a stipulation of settlement. Moreover, even though the parties violated the CSSA by failing to recite and explain in their stipulation why they deviated from CSSA standards in providing basic child support, and the basic child support provisions were properly vacated as a consequence, the provision concerning future college expenses survives the vacatur, and is enforceable. Accordingly, we affirm the order of the Supreme Court insofar as appealed from.

The parties entered into a stipulation of settlement (hereinafter the stipulation), set forth on the record at a hearing on May 31, 2006, which was subsequently incorporated but not merged in a judgment of separation. Subsequent to the entry of the judgment, the father moved to vacate the child support and related provisions of the stipulation, alleging that the stipulation

failed to comply with the "opt-out/deviation" provisions of the CSSA contained in Domestic Relations Law § 240 (1-b) (h). The Supreme Court determined, in effect, that the parties' agreement deviated from the provisions of the CSSA with regard to the calculation of "basic child support." Since the parties failed to comply with the provisions of Domestic Relations Law § 240 (1-b) (h), those basic child support provisions are not enforceable, and the Supreme Court vacated those provisions of the parties' stipulation relating to their basic child support obligation for their three children, ultimately scheduling a hearing for a calculation of basic child support pursuant to the CSSA. The Supreme Court, however, denied that branch of the father's motion which was to vacate the separate provisions of the stipulation that related to the parties' agreement to provide for their children's future college expenses, and the father appeals.

A parent has an obligation to provide support for his or her child's basic needs, an obligation which is addressed in Domestic Relations Law § 240 (1-b) (c) (1), (2). Unlike that basic obligation, support for a child's college education is not mandatory. Absent a voluntary agreement, a parent might be required to provide support for his or her child's attendance at college, but the determination of that obligation is dependent upon the exercise of the court's discretion in accordance with Domestic Relations Law § 240 (1-b) (c) (7) (*see Matter of Poznik v Froebel*, 1 AD3d 366 [2003]; *Miller v Miller*, 299 AD2d 463 [2002]).

Domestic Relations Law § 240 (1-b) (h) requires that any agreement or stipulation voluntarily entered into between the parties, and presented to the court for incorporation in an order or judgment, must include provisions: (1) stating that the parties have been advised of the provisions of the CSSA; (2) stating that the basic child support provisions of the CSSA would presumptively result in the determination of the correct amount of child support to be awarded; (3) stating what the amount of basic child support would have been if calculated pursuant to the CSSA, if the parties' stipulation or agreement deviates from the basic child support obligation; and (4) setting forth the parties' reason or reasons for deviating from the CSSA calculation, if they have chosen to deviate. The requirements of Domestic Relations Law § 240 (1-b) (h) may not be waived by either party or by counsel.

The primary components of the CSSA were enacted pursuant to Laws of 1989 (ch 567, § 7). The present version of Domestic Relations Law § 240 (1-b) (h), regarding the necessity of

including these specific provisions in stipulations when the parties opt out or deviate from the CSSA, was enacted pursuant to Laws of 1992 (ch 41, § 146). Paragraph (h) of Domestic Relations Law § 240 (1-b) was a small part of a comprehensive Medicaid reform bill, and there are no memoranda addressed to paragraph (h) in the relevant legislative history.

The legislative history, however, does include a Memorandum of the State Executive Department relating to the enactment of the CSSA (1989 McKinney's Session Laws of NY, at 2208 *et seq.*). The basic premises underlying the statute are that

> "[b]oth parents have a responsibility to contribute to the economic well-being of their children . . .

> "[c]hildren should not unfairly bear the economic burden of parental separation [and] . . . [c]hildren should be protected as much as possible from the overall decline in living standards that results from parents maintaining two households" (Mem of St Exec Dept, 1989 McKinney's Session Laws of NY, at 2208).

The memorandum explained that the bill, inter alia:

> "(c) [c]reates a step-by-step child support methodology, which includes use of a child support percentage (based upon number of children), to arrive at the basic child support obligation of the parents . . . [and]

> "(d) [r]equires consideration as a part of the basic child support obligation, of the custodial parent's present and future child care needs when the custodial parent is working, or receiving . . . education . . . Reasonable child care expenses are to be prorated in the same proportion as each parent's income is to the total parental income" (Mem of St Exec Dept, 1989 McKinney's Session Laws of NY, at 2209).

The memorandum further indicated there were three reasons why child care expenses were set out as a distinct element: (1) they are a large variable expense that occurs only in some circumstances; (2) when such expenses are incurred they can represent an inordinate proportion of the cost of raising a child; and (3) the burden of child care expenses can be a disincentive for a custodial parent to seek employment.

In contrast to the add-ons for child care expenses and future reasonable health care expenses, which must be awarded and

prorated in the same proportion or percentage as each parent's income bears to the combined parental income, the add-on for educational expenses is within the court's discretion, both as to whether an award of such expenses is to be made in the first instance, and the parties' share of any amount awarded. Specifically, Domestic Relations Law § 240 (1-b) (c) (7) reads:

> "Where the court determines, having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires, that the present or future provision of post-secondary, private, special, or enriched education for the child is appropriate, *the court may* award educational expenses. The non-custodial parent shall pay educational expenses, as awarded, in a manner determined by the court, including direct payment to the educational provider" (emphasis added).

Where the parties' stipulation or agreement fails to comply with the requirements of Domestic Relations Law § 240 (1-b) (h), it is fundamental that the basic child support provisions of the agreement are invalid and cannot be enforced. That portion of the agreement must be set aside and the parties' basic child support obligation must be recalculated through the application of the CSSA (*see Calian v Calian*, 28 AD3d 506 [2006]; *Warnecke v Warnecke*, 12 AD3d 502 [2004]).

Nonetheless, the invalidity of the basic child support obligation, due to a deviation from the CSSA standards without full compliance with Domestic Relations Law § 240 (1-b) (h), does not necessarily require that the entire stipulation be vacated. That a portion of an agreement may be invalid and unenforceable does not necessarily preclude the enforcement of other portions of an agreement (*see Fasano v Fasano*, 43 AD3d 988 [2007]; *Toussaint v Toussaint*, 270 AD2d 338 [2000]). Thus, as the Court of Appeals held in *Ferro v Bologna* (31 NY2d 30 [1972]), the invalidity of an aspect of a separation agreement which relieved a husband and father of any obligation to support his wife and children, due to its contravention of statutory provisions, did not preclude the enforcement of a separate part of the agreement by which he obligated himself to make his children the beneficiaries of a life insurance policy (*see also Conteh v Majestic Farms*, 292 AD2d 485 [2002]; *Donnell v Stogel*, 161 AD2d 93 [1990]).

The determination as to which additional aspects, if any, of the parties' stipulation must be vacated along with the basic

child support provision depends on the circumstances of the particular case and the nature of the obligations addressed in the other provisions of a stipulation. Some provisions may be so directly connected or intertwined with the basic child support obligation that they necessarily must be recalculated along with the basic support obligation.

Part of the problem in differentiating among and between the different obligations is the language utilized in the statute. As used in the Domestic Relations Law,

> " '[b]asic child support obligation' shall mean the sum derived by adding the amounts determined by the application of subparagraphs two and three of paragraph (c) of this subdivision [two is the calculation of the first $80,000 of combined income and three is the calculation based on combined income in excess of $80,000] except as increased pursuant to subparagraphs four [child care expenses], five [unreimbursed health expenses], six [expenses for child care where the custodial parent is looking for work,] and seven [education expenses] of such paragraph" (Domestic Relations Law § 240 [1-b] [b] [1]).

On the other hand, " '[c]hild support' shall mean a sum to be paid pursuant to court order or decree by either or both parents or pursuant to a valid agreement between the parties for care, maintenance and education of any unemancipated child under the age of twenty-one years" (Domestic Relations Law § 240 [1-b] [b] [2]).

The Practice Commentaries to Domestic Relations Law § 240, written by Justice Alan D. Scheinkman, contain the following observation immediately following a reference to "basic child support" and "child support":

> "Nevertheless, notwithstanding this murky statutory language, basic child support has become understood to mean the regular periodic payment of support made by the noncustodial parent to the custodial parent. The obligations for health care, child care, and educational expenses are commonly referred to as 'add-on' expenses . . .

> "Thus, child support consists of two distinct elements: (a) a regular periodic payment, or basic support; and (b) contribution towards 'add-on' expen-

ses, which are additional items not encompassed in the regular, basic child support payment" (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 240, at 250).

The add-ons for unreimbursed health care expenses and child care expenses incurred by a working custodial parent, set forth in Domestic Relations Law § 240 (1-b) (c) (4) and (5), are examples of other obligations that are directly connected with the basic child support calculation. Child care expenses actually incurred by a custodial parent who is working or pursuing an education are required to be determined and to be prorated in the same proportion or percentage as each parent's income bears to the combined parental income. Likewise, responsibility for future reasonable unreimbursed health care expenses shall be prorated in the same proportion or percentage as each parent's income bears to the combined parental income. The calculation of the presumptive basic child support obligation, which entails a determination of the percentage of the total obligation that each parent will bear, thus would have a direct impact on the parties' obligation for child care and unreimbursed reasonable medical expenses.

Unlike child care expenses and unreimbursed health care expenses, however, education expenses are not directly connected to the basic child support calculation. Initially, education expenses differ from these other expenses in that, in the absence of an agreement to pay education expenses, the determination as to whether or not such expenses will be paid is within the court's discretion (see Domestic Relations Law § 240 [1-b] [c] [7]), while child care and unreimbursed health expenses are mandatory. Also, education expenses differ in that such expenses are not necessarily prorated in the same proportion or percentage as each parent's income bears to the combined parental income.

An award for private schooling must be made with due regard for the circumstances of the case, the circumstances of the respective parties, and the best interests of the child (see Cohen v Cohen, 21 AD3d 341 [2005]). These statutory standards are applicable to an award for college expenses (see Matter of French v French, 13 AD3d 624 [2004]), as is a consideration of "the requirements of justice" (Matter of Holliday v Holliday, 35 AD3d 468, 469 [2006]). These same principles also inform the determination as to how to apportion any college expenses that

are awarded (*see Wortman v Wortman,* 11 AD3d 604 [2004] [father required to pay 100% of the child's college expenses]). Since the award of education expenses is within the court's discretion, it is frequently problematic to conclude that an agreement on college expenses deviates from, or opts out of, the CSSA. Nonetheless, a college expense provision might be found, under certain circumstances, to deviate from the CSSA, such as where an apportionment of costs, or the amount of support to be provided, is so unjust that the provision should be vacated for failure to satisfy the CSSA.

The entirety of the stipulation should be considered in determining whether the parties' agreement evinces that trade-offs were made which involved the basic child support figure. In such a situation, expenses that are not directly connected to the CSSA calculation, or even to child support, may be so closely intertwined with the basic child support provision as to require vacatur. Thus, in *Farca v Farca* (271 AD2d 482 [2000]), the wife waived maintenance and equitable distribution of property, upon the understanding that she would receive a certain level of child support. When the court vacated the basic child support provision, it vacated all of the financial provisions of the stipulation and judgment of divorce. The same remedy was applied in *Lepore v Lepore* (276 AD2d 677, 678 [2000]), where we held that the provisions of the parties' agreement regarding maintenance and financial obligations for college expenses were so "closely intertwined" with the basic child support provisions as to require those provisions to be vacated along with the basic child support provisions.

In contrast, we held in *Warnecke v Warnecke* (12 AD3d 502 [2004]), that the record did not support a finding that the maintenance provisions of a stipulation were closely intertwined with the child support provisions. We reached the same result in *Toussaint v Toussaint* (270 AD2d 338 [2000]), where we held that the entire stipulation did not have to be vacated, but only those provisions of the stipulation as failed to comply with the requirements of the CSSA.

In *Toussaint,* however, the provisions relating to educational and health costs were vacated along with those relating to basic child support. The father in *Toussaint* had agreed to pay all health expenses, including costs of a health insurance policy, as well as medical, dental, nursing, ophthalmologic, orthodonic, and every other similar expense, and to pay all tuition and related

expenses for private school, including uniforms. The father also agreed to be responsible for all college and graduate school expenses. While there was little doubt that the health care expenses in *Toussaint* were directly connected to the CSSA calculation, it was for the court to determine whether the education expenses were to be treated similarly. Since the education expenses, including those for college, did not receive separate treatment in the parties' stipulation, they were also deemed to be directly connected to the CSSA calculation. Specifically, the agreement merely recited a list of obligations, of which the father agreed to pay the total expense. Accordingly, the education expense provisions of the agreement in *Toussaint* were not separate from all the other child support aspects of the agreement.

The instant matter, however, falls within the ambit of those cases that have clearly stated that the tuition expense aspect of a college education is distinct from basic child support. "As for the tuition component of college expenses, tuition is an add-on educational expense which is considered separately from the initial calculation of child support for basic need" (*Tryon v Tryon*, 37 AD3d 455, 457 [2007]). "Such a credit [against child support payments] should not be calculated based on the cost of college tuition, which is beyond the realm of what is normally considered 'child support' " (*Lee v Lee*, 18 AD3d 508, 512 [2005]; *see Matter of Dorcean v Longueira*, 44 AD3d 770 [2007]; *Wortman v Wortman*, 11 AD3d 604 [2004]; *Guryn v Guryn*, 308 AD2d 564 [2003]).

The parties' stipulation, insofar as it pertains to their support for their children's attendance at college, recites as follows:

> "The parties further acknowledge, each to the other, that it is their anticipation that each of their children attends college. And in this regard, the parties agree to contribute pro rata to income to the minimum of a SUNY education. That is State of New York education for a New York State resident for each child and shall contribute more than that minimum, if possible, based upon their respective financial circumstances at the time each child makes application to college. College expenses with respect to the parties' obligation, to pay for same pro rata to income is defined as including but not limited to tuition, room and board, mandatory books, supplies and fees, pre-

> college testing classes and actual testing, such as the SATs, scholastic aptitude tests and reasonable number of applications to colleges for purposes of the child or children reviewing campuses for purposes of making a final decision with respect to the selection of college."

To the extent that the commitment to meet future college expenses addresses room and board, the agreement does not deviate from the CSSA as it provides that the parties will contribute to such expenses pro rata to income. The stipulation also includes extensive provisions as to how the parties are to deal with various custodial funds that have been earmarked for college education expenses, including a recital that such funds would be utilized in the first instance before triggering the parties' obligation to contribute to college expenses proportionally based on their income.

There is nothing in the record that would support a finding that the father agreed to pay a share of college expenses as a trade-off against some other expense. When the parties agreed to equitable distribution and traded off certain assets, the stipulation directly addressed those trade-offs. Thus, the wife received sole title to the marital residence in exchange for waiving any claim to the husband's pension, IRA, or deferred-compensation account. Similarly, the wife waived any claim to certain stock in exchange for the husband's waiver of any claim to a joint bank account.

Additionally, the provisions of the parties' stipulation regarding college expenses are distinguishable from those provisions of the stipulation based upon the calculation of basic child support. In particular, the stipulation provides: "Mr. Cimons shall pay child support for the benefit of the children and to the age of 21 or 22, if in college." " 'In the absence of a voluntary agreement, a parent may not be directed to pay support or to contribute to the college education of a child who has attained the age of 21 years' " (*Gibbons v Gibbons*, 31 AD3d 605, 606 [2006], quoting *Matter of Calvello v Calvello*, 20 AD3d 525, 527 [2005]). "A parent is not liable for the support of a child who has reached the age of 21, unless there is an express agreement to pay such support" (*Ciampa v Ciampa*, 47 AD3d 745, 748 [2008]). The father's agreement to support his children and contribute to their college education expenses beyond the age of 21 years inures primarily to the benefit of the three children. As it is the

intent of the CSSA to protect the children, to the extent possible, from the economic consequences of their parents' divorce or separation, it would seem particularly unjust to allow the father, whose adjusted income, in 2005, after deduction of all mandatory deductions including his maintenance obligation, was reported as $130,000, to wield noncompliance with the CSSA as a sword to eviscerate his commitment to provide his children with support for their college education.

In *Fasano v Fasano* (43 AD3d 988 [2007]), we found that the parties to the relevant agreement did not opt out of the CSSA standards with respect to basic child support, but that a cost-of-living adjustment (hereinafter COLA) included in the agreement represented potential future deviations from the CSSA basic child support obligation. The remedy was to vacate the COLA provision, while the basic child support provision of the agreement was not vacated. Similarly, the vacatur of the basic child support provisions of the stipulation here does not warrant the vacatur of the provisions respecting college education expenses.

The parties' stipulation in this case dealt with their commitment to meet their children's college expenses in an extensive provision which was separate and discrete from the child support provision. This case is unlike *Toussaint,* where the reference to future college expenses was but one phrase in a long list of health and education expenses added on to the child support obligation. Here, by contrast, the parties separately addressed their commitment that their children attend college, by providing that they would share, pro rata, at a minimum, the costs of a State University of New York education, that they would contribute more than that minimum if able, that certain custodial accounts designated for college expenses would be applied to the college expenses prior to the parties' obligation to make pro rata contributions, and that any surplus in such custodial accounts would "spill over" from child to child.

The provisions of the parties' stipulation relating to future college expenses were thus separate and distinct from the provisions relating to basic child support. Those two discrete sets of provisions were not closely intertwined (*see Warnecke v Warnecke*, 12 AD3d 502 [2004]; *cf. Fasano v Fasano*, 43 AD3d 988 [2007]). Accordingly, the Supreme Court properly denied that branch of the father's motion which was to vacate the separate provisions of the stipulation that related to the

parties' agreement to provide for their children's future college expenses. Thus, the order is affirmed insofar as appealed from.

SPOLZINO, J.P., DILLON and DICKERSON, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.