Sinnott v Sinnott (2021 NY Slip Op 03073)





Sinnott v Sinnott


2021 NY Slip Op 03073


Decided on May 12, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 12, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LEONARD B. AUSTIN
BETSY BARROS
PAUL WOOTEN, JJ.


2019-06042
 (Index No. 200403/16)

[*1]Kathleen A. Sinnott, respondent-appellant,
v
Otis Sinnott, appellant-respondent.


DiMascio & Associates, LLP, Garden City, NY (Lisa J. Silverman, Katelyn M. Moloney, and John P. DiMascio, Jr., of counsel), for appellant-respondent.
Schwartz Sladkus Reich Greenberg Atlas, LLP, New York, NY (Matthew C. Kesten of counsel), for respondent-appellant.



DECISION & ORDER
In an action for divorce and ancillary relief, the defendant appeals, and the plaintiff cross-appeals, from stated portions of a judgment of divorce of the Supreme Court, Nassau County (Thomas A. Rademaker, J.), entered April 19, 2019. The judgment of divorce, insofar as appealed from, upon a decision of the same court dated December 18, 2018, made after a nonjury trial, (1) denied the defendant a separate property credit of $937,000, and, in effect, rejected the testimony of the defendant's expert on the value of certain real property located in Santa Fe, New Mexico, (2) directed the defendant to pay child support and add-on expenses until the parties' unemancipated child reached the age of 22 years and six months under stated circumstances, (3) directed the defendant to pay 80% of that child's private high school tuition, fees, books, supplies, materials, class trips, enrichment activities, and all school-related expenses, and (4) directed that certain investment accounts be equally divided between the parties without specifying a date of valuation for those accounts or limiting distribution only to marital property. The judgment of divorce, insofar as cross-appealed from, (1) directed the defendant to pay child support in the sum of only $4,281.44 per month and only 80% of add-on expenses for the parties' unemancipated child, (2) declined to make the award of maintenance and child support retroactive to the date of commencement of the action, (3) declined to direct the defendant to pay the cost of health insurance for the plaintiff, and (4) declined to direct the defendant to obtain or maintain life insurance in an amount sufficient to secure his support obligations.
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by deleting the provision thereof requiring the defendant to pay child support and add-on expenses until the parties' unemancipated child reaches the age of 22 if that child is still attending college, and substituting therefor a provision directing the defendant to pay child support and add-on expenses until that child reaches the age of 21 or is otherwise emancipated, (2) by deleting the provision thereof directing the defendant to pay 80% of that child's class trips, enrichment activities, and all school-related expenses, (3) by deleting the provision thereof directing the defendant to pay child support in the sum of $4,281.44 per month commencing on January 1, 2019, and substituting therefor a provision directing the defendant to pay child support in the sum of $4,591.42 per month retroactive to February 16, 2016, (4) by deleting the provision thereof directing the defendant to pay 80% of the parties' unemancipated child's unremibursed medical expenses and substituting therefor a provision directing the defendant to pay 92.6% of that child's [*2]unreimbursed medical expenses, (5) by deleting so much of the provision as awarded the plaintiff maintenance commencing on January 1, 2019, and substituting therefor a provision awarding the plaintiff maintenance retroactive to February 16, 2016, (6) by adding thereto a provision directing the defendant to pay the plaintiff's health insurance costs for the same duration as the defendant's maintenance obligation, and (7) by adding thereto a provision directing the defendant to obtain or maintain an appropriate amount of life insurance with death benefits adequate to secure the payment of maintenance, child support, and health insurance; as so modified, the judgment is affirmed insofar as appealed from and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for (1) a calculation of the amount of retroactive maintenance and child support arrears, including add-ons, from February 16, 2016, giving the defendant appropriate credit for voluntary child support payments made prior to a pendente lite order dated August 16, 2017, any voluntary maintenance payments made during the pendency of the action, and any temporary maintenance and child support payments made pursuant to the pendente lite order, (2) a calculation of any amounts owed by the defendant to the plaintiff for the plaintiff's health insurance costs from February 16, 2016, and (3) a calculation of the appropriate amount of life insurance with death benefits to be obtained by the defendant to secure the payment of maintenance, child support, and health insurance costs for so long as the defendant is obligated to make such payments.
The parties were married in 1989, and are the parents of one child born in 2003 (hereinafter the child), as well as two emancipated children. The plaintiff commenced this action on February 16, 2016, by filing a summons and complaint. Pursuant to a so-ordered custody and parenting stipulation, the plaintiff has sole legal and residential custody of the child. After a nonjury trial on the outstanding issues of, inter alia, child support, maintenance, and equitable distribution, the Supreme Court issued a decision dated December 18, 2018. The court subsequently entered a judgment of divorce dated April 17, 2019, which incorporated the parties' stipulation and referenced the December 18, 2018 decision. The defendant appeals from so much of the judgment of divorce as denied him a separate property credit of $937,000, and, in effect, rejected the testimony of his expert on the value of certain real property located in Santa Fe, New Mexico, (2) directed the defendant to pay child support and add-on expenses until the child reached the age of 22 years and six months under stated circumstances, (3) directed the defendant to pay 80% of the child's private high school tuition, fees, books, supplies, materials, class trips, enrichment activities, and all school-related expenses, and (4) directed that certain investment accounts be equally divided between the parties without specifying a date of valuation for those accounts or limiting distribution only to marital property. The plaintiff cross-appeals from so much of the judgment of divorce as (1) directed the defendant to pay child support in the sum of only $4,281.44 per month and only 80% of add-on expenses for the child, (2) declined to make the award of maintenance and child support retroactive to the date of commencement of the action, (3) declined to direct the defendant to pay the cost of health insurance for the plaintiff, and (4) declined to direct the defendant to obtain or maintain life insurance in an amount sufficient to secure his support obligations.
The defendant contends that the Supreme Court should have awarded him a separate property credit of $937,000, reflecting inherited funds he alleges he contributed towards the purchase of a marital residence in Santa Fe, New Mexico (hereinafter the Santa Fe property). "Where a party contributes his or her separate property toward the purchase of a marital asset, such as a marital residence, the party should be given a credit for the amount so contributed prior to the equitable division of the asset" (Westreich v Westreich, 169 AD3d 972, 977, lv denied, 33 NY3d 914; see Fields v Fields, 15 NY3d 158, 167). The proceeds from an inheritance are separate property (see Domestic Relations Law § 236[B][1][d][1]; Renck v Renck, 131 AD3d 1146, 1148). However, where separate property has been commingled with marital property, for example in a joint bank account, there is a presumption that the commingled funds constitute marital property (see Candea v Candea, 173 AD3d 663, 666; Belilos v Rivera, 164 AD3d 1411, 1412; Renck v Renck, 131 AD3d at 1148; Signorile v Signorile, 102 AD3d 949, 950; Crescimanno v Crescimanno, 33 AD3d 649, 649). To overcome a presumption that commingled property is marital property, the party asserting that the property is separate must establish by clear and convincing evidence that the property originated solely as separate property and the joint account was created only as a matter of convenience, without the intention of creating a beneficial interest (see Renck v Renck, 131 AD3d at 1149; Signorile v Signorile, 102 AD3d at 950; Crescimanno v Crescimanno, 33 AD3d at 649).
Here, by depositing $937,000 of inherited funds into an account titled jointly with the plaintiff, the defendant created the presumption that the funds were marital (see Candea v Candea, 173 AD3d at 666; Renck v Renck, 131 AD3d at 1149). Contrary to the defendant's contention, he failed to rebut the presumption that the $937,000 was transmuted into marital property, as he failed to establish that the funds were deposited into the parties' joint account only as a matter of convenience without the intention of creating a beneficial interest (see Candea v Candea, 173 AD3d at 666; Renck v Renck, 131 AD3d at 1149; cf. Westreich v Westreich, 169 AD3d at 977; Wade v Steinfeld, 15 AD3d 390, 391).
Contrary to the defendant's further contention, the Supreme Court did not improvidently exercise its discretion by, in effect, rejecting the valuation of the Santa Fe property offered by the defendant's expert appraiser (see Greisman v Greisman, 98 AD3d 1079, 1081; Pickard v Pickard, 33 AD3d 202, 207; Madonna v Madonna, 265 AD2d 455, 455).
Next, the defendant contends that the Supreme Court erred by failing to direct that the plaintiff's Fidelity account, the defendant's Merrill Lynch account ending 4505, and the defendant's Merrill Lynch account ending 3315 should be valued as of the date of commencement of the action, and that only marital property in those accounts should be subject to equitable distribution. "The trial court has broad discretion in selecting the dates for the valuation of marital assets and, depending on the particular circumstances of the case, may appropriately fix different valuation dates for different assets" (Pappas v Pappas, 140 AD3d 838, 840). The valuation date of a marital asset may be set "anytime from the date of commencement of the action to the date of trial" (Domestic Relations Law § 236[B][4][b]; Kushman v Kushman, 297 AD2d 333, 334). Here, the court failed to set forth the valuation date for the plaintiff's Fidelity account, the defendant's Merrill Lynch account ending 4505, and the defendant's Merrill Lynch account ending 3315. The party claiming that an account was actively managed, or contained separate property not subject to equitable distribution, has the burden of proof with respect to those claims (see Farag v Farag, 4 AD3d 502, 503; Barbuto v Barbuto, 286 AD2d 741, 743-744; Mahoney-Buntzman v Buntzman, 11 Misc 3d 869, 876 [Sup Ct, Westchester County]).
The defendant failed to provide evidence as to whether the accounts in question were actively managed or passive. The Supreme Court therefore did not improvidently exercise its discretion in treating those accounts, in effect, as passive accounts, by its direction that the accounts be liquidated within 30 days from the entry of the decision after trial and that the resulting proceeds be divided 50-50. However, since assets must be valued at a date not earlier than an action's commencement nor later than the trial (see Domestic Relations Law § 236[B][4][b]; Kushman v Kushman, 297 AD2d at 334), we modify the judgment to the extent of directing that the accounts be valued as of August 28, 2018, the first date of trial.
The plaintiff correctly contends that the Supreme Court made numerous errors when calculating the defendant's basic child support obligation under the Child Support Standards Act (hereinafter the CSSA). In the interest of efficiency and judicial economy, rather than remit the matter to the court, we deem it appropriate to conduct our own review of the record, which is sufficiently developed, and to recalculate the defendant's basic child support obligation (see Matter of Cordwell v Clarke, 128 AD3d 956, 957; Beroza v Hendler, 109 AD3d 498, 501).
The CSSA sets forth a three step method for calculating child support (see Holterman v Holterman, 3 NY3d 1, 10; Matter of Cassano v Cassano, 85 NY2d 649, 653; Kaufman v Kaufman, 189 AD3d 31, 71). Step one of the three-step method is the court's calculation of "combined parental income" (Holterman v Holterman, 3 NY3d at 10 [internal quotation marks omitted]). In determining parental income under the CSSA, the court must begin with the parent's "gross (total) income as should have been or should be reported in the most recent federal income tax return" (Domestic Relations Law § 240[1-b][b][5][i]; see Holterman v Holterman, 3 NY3d at 10; Matter of Peddycoart v MacKay, 145 AD3d 1081, 1082), and then to the extent not already included in gross income, the amount of income or compensation voluntarily deferred and income received from certain specified sources, including pensions and retirement benefits (see Domestic Relations Law § 240[1-b][b][5][iii][F]; Holterman v Holterman, 3 NY3d at 10; Matter of Ballard v Davis, 259 AD2d 881, 883). After computing statutory income, a limited number of deductions are allowed [*3]under Domestic Relations Law § 240(1-b) (see Domestic Relations Law § 240[1-b][b][5][vii][A]-[H]; Holterman v Holterman, 3 NY3d at 10). Allowable deductions include spousal support and federal insurance contributions act (FICA) taxes actually paid from each parent's gross income (see Domestic Relations Law § 240[1-b][b][5][vii][C], [H]). The court next multiplies the combined parental income figure, up to a statutory cap, by a designated percentage based on the number of children to be supported, and then allocates that amount between the parents, applying each parent's respective portion of the total income to reach the amount of each parent's support obligation (see Domestic Relations Law § 240[1-b][b][3]; [c][2]; Holterman v Holterman, 3 NY3d at 11; Matter of Cassano v Cassano, 85 NY2d at 653). In the final step, where combined parental income exceeds the statutory cap, "the court shall determine the amount of child support for the amount of the combined parental income in excess of such dollar amount through consideration of the factors set forth in paragraph (f) of [Domestic Relations Law § 240(1-b)] and/or the child support percentage" (Domestic Relations Law § 240[1-b][c][3]; Holterman v Holterman, 3 NY3d at 11; Kaufman v Kaufman, 189 AD3d at 71-72).
Here, as the defendant acknowledges, the Supreme Court incorrectly calculated his gross income for 2017. The defendant's "gross (total) income as should have been . . . reported in the most recent federal income tax return" (Domestic Relations Law § 240[1-b][b][5][i]) was $1,037,044, and, with $24,000 in deferred compensation added to that amount (see Domestic Relations Law § 240[1-b][b][5][iii][F]; Matter of Ballard v Davis, 259 AD2d 881, 883), the defendant's gross income for CSSA purposes was $1,061,044.25. The parties agree that the court improperly deducted $60,000 for the child's educational expenses from the defendant's gross income for CSSA purposes, and also agree that the defendant's annual maintenance payments to the plaintiff of $48,000 and the defendant's Social Security and Medicare contributions of $37,644.68, should be deducted from his gross income (see Domestic Relations Law § 240[1-b][vii][C], [H]). As a result, the defendant's income for CSSA purposes is $975,399.57. The parties agree that the plaintiff's income for CSSA purposes is $78,000 per year, which consists of $30,000 of imputed income and $48,000 of maintenance. Thus, the parties' combined income for CSSA purposes is $1,053,399.57 (see Domestic Relations Law § 240[1-b][b][4]). The plaintiff's pro rata share of the parties' combined income is 7.4% and the defendant's pro rata share of the parties' combined income is 92.6%, not 20% and 80% respectively, as the court incorrectly determined.
In the next step, the parties' combined income up to the statutory cap ($148,000 at the time) is multiplied by the designated percentage based on the number of children to be supported (17% for one child), which results in an amount of $25,160 (see Domestic Relations Law § 240[1-b][b][3]; [c][2]; Matter of Cassano v Cassano, 85 NY2d at 653). That amount should be allocated between the parties according to their pro rata share of the combined parental income (see Domestic Relations Law § 240[1-b][c][2]; Matter of Cassano v Cassano, 85 NY2d at 653). The defendant's share of the basic annual support obligation is 92.6% of $25,160 or the annual sum of $23,298.16.
The third step of the analysis applies "[w]here, as here, the combined parental income exceeds the statutory baseline" (Kaufman v Kaufman, 189 AD3d at 72). In that situation, "the court may apply the statutory percentage to all or part of the income over the baseline or it may consider the statutory factors to determine what, if any, additional child support should be awarded" (id.). Here, neither party contends that the Supreme Court improvidently exercised its discretion in capping the amount of combined parental income at $350,000 (see Beroza v Hendler, 109 AD3d at 502; cf. Kaufman v Kaufman, 189 AD3d at 72). We conclude that the court did not improvidently exercise its discretion in applying the statutory child support percentage of 17% to the amount of the capped combined parental income in excess of the then-applicable baseline of $148,000, but incorrectly used 80% as the defendant's purported pro rata share of the parties' combined income (see Domestic Relations Law § 240[1-b][c][3]; Iarocci v Iarocci, 98 AD3d 999, 1001). Thus, under step three, we apply the child support percentage of 17% to the parties' capped excess income above the then-applicable baseline, or $202,000, which yields the annual amount for both parents of $34,340, the defendant's share of which is 92.6%, or $31,798.84. Adding this amount to the defendant's basic annual support obligation of $23,298.16 yields an annual obligation of $55,097 per year, or $4,591.42 per month. Accordingly, we modify the judgment of divorce to direct the defendant to pay the plaintiff $4,591.42 per month in basic child support.
The plaintiff also contends that the defendant should be directed to pay the add-on expenses awarded by the Supreme Court in the same pro rata share as his basic child support obligation. However, the plaintiff failed to raise any arguments specifically directed to increasing the defendant's contributions to the child's add on expenses. "[B]asic child support has become understood to mean the regular periodic payment of support made by the noncustodial parent to the custodial parent. The obligations for health care, child care, and education[ ] expenses are commonly referred to as add-on expenses" (Cimons v Cimons, 53 AD3d 125, 130 [internal quotation marks omitted]; see Michael J.D. v Carolina E.P., 138 AD3d 151, 153). These add-on expenses are expressly included in Domestic Relations Law § 240[1-b], "with their own specific standards and considerations justifying the making of such an award" (Michael J.D. v Carolina E.P., 138 AD3d at 153).
Regarding the add-on for uncovered, unreimbursed medical and related expenses, "responsibility for future reasonable unreimbursed health care expenses shall be prorated in the same proportion or percentage as each parent's income bears to the combined parental income" (Cimons v Cimons, 53 AD3d at 131). Accordingly, we modify the judgment of divorce to provide that the defendant's pro rata share of the child's uncovered, unreimbursed medical and related expenses is 92.6%, the same proportion as his income is to the combined parental income (see id.; Griggs v Griggs, 44 AD3d 710, 714).
"Unlike child care expenses and unreimbursed health care expenses, . . . education expenses are not directly connected to the basic child support calculation" and "are not necessarily prorated in the same proportion or percentage as each parent's income bears to the combined parental income" (Cimons v Cimons, 53 AD3d at 131). Under the circumstances of this case, including the reasons discussed below, we decline to increase the defendant's contributions to the remaining add-on expenses, which are related to the child's education and extracurricular activities.
The defendant contends that the Supreme Court improvidently exercised its discretion by requiring him to pay 80% of the child's private high school tuition, fees, books, supplies, class trips, enrichment activities, and other school related activities. A court may direct a parent to contribute to a child's educational expenses, even in the absence of special circumstances or a voluntary agreement of the parties (see Pilkington v Pilkington, 185 AD3d 844, 846-847; Corkery v Corkery, 142 AD3d 576, 577; Matter of Amos-Richburg v Richburg, 94 AD3d 1112, 1113; Chan v Chan, 267 AD2d 413, 414). "However, a court does not have unfettered discretion in making such an award" (Matter of Pittman v Williams, 127 AD3d 755, 757). "In determining whether to award educational expenses, a court must consider the circumstances of the case, the circumstances of the respective parties, the best interests of the children, and the requirements of justice" (Matter of Weissbach v Weissbach, 169 AD3d 702, 704 [internal quotation marks omitted]; see Domestic Relations Law § 240[1-b][c][7]; Chan v Chan, 267 AD2d at 414 ; Manno v Manno, 196 AD2d 488, 491).
Here, the Supreme Court did not improvidently exercise its discretion by directing the defendant to pay 80% of the child's tuition at Marymount High School of New York (hereinafter Marymount), or a similar private high school. The father contends that he was never consulted regarding the child's attendance at Marymount and did not consent to her attending Marymount. Nevertheless, as the defendant acknowledges, the parties' two older children, as well as the child, were always educated in private schools, albeit less expensive private schools than Marymount (see Adjmi v Tawil, 180 AD3d 435, 436; Matter of Daughtry v Jacobs, 155 AD3d 947, 950; Iarocci v Iarocci, 98 AD3d at 1001; Maybaum v Maybaum, 89 AD3d 692, 696-697). Further, the defendant does not contend that he is unable to support himself and pay 80% of the child's tuition at Marymount (see Matter of Weissbach v Weissbach, 169 AD3d at 704; Matter of Daughtry v Jacobs, 155 AD3d at 950; Corkery v Corkery, 142 AD3d at 578; Matter of Amos-Richburg v Richburg, 94 AD3d at 1114). For similar reasons, the Supreme Court did not improvidently exercise its discretion by requiring the defendant to pay 80% of the child's fees, books, supplies, and materials (see Louzoun v Montalto, 70 AD3d 652, 653).
Nevertheless, the Supreme Court improvidently exercised its discretion by directing the defendant to pay 80% of the child's class trips, enrichment activities, and all other school related [*4]expenses. "Basic child support, when calculated properly, is presumed to meet all the child's basic needs" (Michael J.D. v Carolina E.P., 138 AD3d at 153). "Thus, the expenses of leisure, extracurricular and enrichment activities, such as after-school clubs, sporting activities, etc., are usually not awarded separately, but are encompassed within the basic child support award" (id. at 153-154). A court can order a parent to pay these expenses "over and above basic child support" (id. at 154). However, if it does so, "it is a deviation from the basic statutory formula and requires an analysis under" the factors set forth in Domestic Relations Law § 240(1-b)(f) (Michael J.D. v Carolina E.P., 138 AD3d at 154). "Although all the factors do not have to present, the court needs to articulate its reasons for making such a deviation from basic child support and relate those reasons to the statutory paragraph (f) factors" (id.; see Matter of Pittman v Williams, 127 AD3d at 756). Here, the Supreme Court did not provide a benchmark for what class trips, enrichment activities, and all other school related expenses could include and there was no cap on the total cost (see Michael J.D. v Carolina E.P., 138 AD3d at 157). In any event, under the circumstances of this case, we find that the award of basic child support is sufficient to meet these needs.
The defendant next contends that the Supreme Court improperly directed him to pay basic child-support and add-on expenses for the child after she reaches the age of 21. A parent has no legal obligation to provide for or contribute to the support of a child over the age of 21 (see Abrams v Abrams, 57 AD3d 809, 811; Forester v Forester, 234 AD2d 264, 265). "In the absence of a voluntary agreement, a parent may not be directed to pay support or to contribute to the college education of a child who has attained the age of 21 years, and has no obligation to continue the support of a child after the child reaches the age of 21 years" (Miller v Miller, 299 AD2d 463, 464 [internal quotation marks omitted]; see Attea v Attea, 30 AD3d 971, 972, affd 7 NY3d 879; Matter of Calvello v Calvello, 20 AD3d 525, 527; Maroney v Maroney, 173 AD2d 685, 685). Here, there was no voluntary agreement, and accordingly, the court should not have directed the defendant to pay basic child support and add-on expenses for the child after she reaches the age of 21.
As the plaintiff correctly contends, the Supreme Court should not have directed the defendant to pay maintenance and child support commencing on the first day of the first month following its decision after trial. A party's maintenance and child support obligations commence, and are retroactive to, the date the applications for maintenance and child support were first made, which, in this case, was February 16, 2016 (see DiLascio v DiLascio, 170 AD3d 804, 808; Schack v Schack, 128 AD3d 941, 943; Levitt v Levitt, 97 AD3d 543, 545; Schiffer v Schiffer, 21 AD3d 889, 890; Miklos v Miklos, 9 AD3d 397, 399). "However, the party is also entitled to a credit for any amount of temporary maintenance and child support already paid" (Schiffer v Schiffer, 21 AD3d at 890; see Miklos v Miklos, 9 AD3d at 399). Here, the defendant may be entitled to credit for voluntary child support payments which were made prior to a pendente lite order dated August 16, 2017, and for voluntary maintenance payments made during the pendency of the action (see Markowitz v Markowitz, 146 AD3d 872, 874). In addition, he is entitled to a credit for any amount of temporary maintenance and child support which was paid pursuant to the pendente lite order (see DiLascio v DiLascio, 170 AD3d at 808; Markowitz v Markowitz, 146 AD3d at 874). Consequently, we remit the matter to the Supreme Court, Nassau County, for a determination as to the amount of retroactive child support, including add-ons, and maintenance arrears from February 16, 2016, giving the defendant appropriate credits (see DiLascio v DiLascio, 170 AD3d at 808; Schack v Schack, 128 AD3d at 943-944; Levitt v Levitt, 97 AD3d at 545). The court also should determine whether the payment of any arrears due should be made in one sum or periodic sums.
Further, under the circumstances of this case, the Supreme Court should have directed the defendant to pay the plaintiff's health insurance costs during the period the defendant is obligated to pay maintenance (see Domestic Relations Law § 236[B][8][a]; DiLascio v DiLascio, 170 AD3d at 808; Gorman v Gorman, 165 AD3d 1067, 1073; Raynor v Raynor, 68 AD3d 835, 838; Guneratne v Guneratne, 214 AD2d 871, 873). Since this direction should be effective as of the date the request was made, in this case February 16, 2016, we remit the matter to the Supreme Court, Nassau County, for a determination as to what, if any, amounts are owed by the defendant to the plaintiff on account of this direction (see Gorman v Gorman, 165 AD3d at 1073).
Finally, under Domestic Relations Law § 236(B)(8)(a), the courts have the general authority to "'order a party to purchase, maintain or assign a policy of insurance on the life of either [*5]spouse'" (Hartog v Hartog, 85 NY2d 36, 50, quoting Domestic Relations Law § 236[B][8][a]). "The purpose of this provision is . . . to ensure that the spouse or children will receive the economic support for payments that would have been due had the payor spouse survived" (Mayer v Mayer, 142 AD3d 691, 696; see Corless v Corless, 18 AD3d 493, 494). Here, the Supreme Court should have directed the defendant to obtain or maintain a policy of life insurance for the benefit of the plaintiff and the child in an amount sufficient to secure his maintenance, child support, and health insurance obligations. Accordingly, we remit the matter to the Supreme Court, Nassau County, to determine an appropriate amount of life insurance with death benefits adequate to secure the payment of the maintenance, child support, and health insurance for as long as the defendant is obligated to pay maintenance, child support, and health insurance (see DiLascio v DiLascio, 170 AD3d at 809; D'Iorio v D'Iorio, 135 AD3d 693, 697).
DILLON, J.P., AUSTIN, BARROS and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court