Diliberto v Diliberto (2024 NY Slip Op 04244)

Diliberto v Diliberto

2024 NY Slip Op 04244

Decided on August 21, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 21, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
WILLIAM G. FORD
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2019-02159
 (Index No. 201830/12)

[*1]Dee Jae Diliberto, appellant, 
v
Gregg Michael Diliberto, respondent.

The Law Firm of Joel R. Brandes, P.C., New York, NY, for appellant.
Gassman Baiamonte Gruner, P.C., Garden City, NY (Karen Bodner of counsel), for respondent.

DECISION & ORDER
In an action for a divorce and ancillary relief, the plaintiff appeals from stated portions of a judgment of divorce of the Supreme Court, Nassau County (Jeffrey A. Goodstein, J.), entered December 14, 2018. The judgment of divorce, upon a decision of the same court dated October 25, 2018, made after a nonjury trial, inter alia, (1) awarded the plaintiff maintenance in the sum of only $2,000 per month for a period of only four years, (2) failed to award the plaintiff retroactive maintenance, (3) directed the defendant to pay basic child support in the sum of only $3,162.50 per month and only 69% of the extracurricular activities, add-on expenses, and unreimbursed medical expenses for the parties' children, (4) distributed certain assets between the parties, (5) awarded the plaintiff attorneys' fees in the sum of only $75,000, (6) failed to direct the defendant to pay the cost of health insurance for the plaintiff, (7) failed to direct the defendant to obtain or maintain life insurance in an amount sufficient to secure his maintenance obligations, (8) failed to direct the allocation of certain expenses allegedly incurred by the plaintiff during the action, and (9) directed that the plaintiff may resume the use of the name "Jenkins" as her maiden name.
ORDERED that the judgment of divorce is modified, on the law, on the facts, and in the exercise of discretion, (1) by adding thereto a provision awarding the plaintiff maintenance retroactive to June 29, 2012, the date of commencement of this action, in the sum of $2,000 per month, (2) by deleting the provision thereof directing the defendant to pay basic child support in the sum of $3,162.50 per month and 69% of the extracurricular activities, add-on expenses, and unreimbursed medical expenses for the children, and (3) by adding thereto a provision directing the defendant to pay the cost of health insurance for the plaintiff for the same period that the defendant is required to pay maintenance; as so modified, the judgment of divorce is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, (1) for a calculation of the defendant's maintenance arrears, including appropriate credits to the defendant, if any, (2) for a new determination of the defendant's child support obligations, including arrears owed, if any, and (3) for a calculation of any arrears owed by the plaintiff to the defendant for health insurance costs, and the entry of an appropriate amended judgment of divorce thereafter.
The parties were married in March 2000 and have two children together. In March 2012, the parties entered into a postnuptial agreement, which was thereafter amended. On June 29, [*2]2012, the plaintiff commenced this action for a divorce and ancillary relief. After a nonjury trial, the Supreme Court determined, inter alia, the issues of maintenance, child support, equitable distribution, and attorneys' fees in a decision dated October 25, 2018. The court subsequently entered a judgment of divorce entered December 14, 2018, upon the decision. The plaintiff appeals from stated portions of the judgment of divorce.
In determining maintenance and child support obligations, "[t]he court has considerable discretion in determining whether income should be imputed to a party and the court's credibility determinations are accorded deference on appeal" (Tuchman v Tuchman, 201 AD3d 986, 990 [internal quotation marks omitted]). "A parent's . . . obligation[s] [are] not necessarily determined by his or her current financial condition, but rather by his or her ability to provide support" (Volkerick v Volkerick, 153 AD3d 885, 886 [internal quotation marks omitted]). "[A] court need not rely upon a party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated future potential earnings. The court may impute income to a party based on his or her employment history, future earning capacity, educational background, or money received from friends and relatives" (Tuchman v Tuchman, 201 AD3d at 990 [citations, alterations, and internal quotation marks omitted]). "While a court is afforded considerable discretion in determining whether to impute income to a party, a determination to impute income will be rejected where the amount imputed was not supported by the record, or the imputation was an improvident exercise of discretion" (Weiss v Nelson, 196 AD3d 722, 724 [alternations and internal quotation marks omitted]).
Contrary to the plaintiff's contention, the Supreme Court's decision reflects a thorough consideration of the evidence regarding the defendant's income, including his job search efforts, and its credibility findings will not be disturbed. The court did not improvidently exercise its discretion in imputing only $175,000 of annual income to the defendant (see Duffy v Duffy, 84 AD3d 1151, 1151-1152; cf. Weiss v Nelson, 196 AD3d at 724). Similarly, the court providently exercised its discretion in imputing $45,000 of annual income to the plaintiff. Among other reasons, the plaintiff—who, after a May 2017 motor vehicle accident, took the New York State bar exam and participated in trial proceedings in the court's presence, including by offering testimony—failed to demonstrate through expert testimony or otherwise that any accident-related medical condition from which she suffered rendered her unable to earn income of $45,000 or more annually, whether as a law school graduate or otherwise.
"[M]aintenance is a support payment awarded to assist the less affluent spouse in meeting his or her reasonable needs in light of the predivorce standard of living" (Kaufman v Kaufman, 189 AD3d 31, 70). "The overriding purpose of a maintenance award is to give the spouse economic independence, and it should be awarded for a duration that would provide the recipient with enough time to become self-supporting" (Sansone v Sansone, 144 AD3d 885, 886 [internal quotation marks omitted]). "Maintenance is intended to be rehabilitative in nature, and thus the function of durational rather than permanent maintenance is to allow the recipient spouse an opportunity to achieve economic independence" (Papakonstantis v Papakonstantis, 163 AD3d 839, 841). "The amount and duration of spousal maintenance is an issue generally committed to the sound discretion of the trial court and each case is to be resolved upon its own unique facts and circumstances" (Silvers v Silvers, 197 AD3d 1195, 1199). Since this action was commenced prior to January 23, 2016, "[t]he factors to be considered in [determining] a maintenance award [we]re, among others, the standard of living of the parties, the income and property of the parties, the distribution of property, the duration of the marriage, the health of the parties, the present and future earning capacity of the parties, the ability of the party seeking maintenance to be self-supporting, the reduced or lost earning capacity of the party seeking maintenance, and the presence of children of the marriage in the respective homes of the parties" (Sansone v Sansone, 144 AD3d at 886 [internal quotation marks omitted]; see Tuchman v Tuchman, 201 AD3d at 991). "[T]his Court's authority in determining the issues of maintenance is as broad as that of the trial court" (DiNozzi v DiNozzi, 74 AD3d 866, 867).
Here, the plaintiff entered the marriage as a certified ophthalmic technician and with a degree in business administration. Although she did not work outside the home for most of the [*3]marriage, which lasted approximately 12 years prior to the commencement of this action, she earned a law degree in 2015. Under the circumstances of this case, the Supreme Court providently exercised its discretion in awarding the plaintiff the sum of $2,000 per month in maintenance for a period of four years. The court nonetheless erred in failing to award retroactive maintenance in the same monthly sum. "A party's maintenance and child support obligations commence, and are retroactive to, the date the applications for maintenance and child support were first made" (Sinnott v Sinnott, 194 AD3d 868, 878). "However, the party is also entitled to a credit for any amount of temporary maintenance and child support already paid" (id. at 878 [internal quotation marks omitted]). In this case, the plaintiff's application for maintenance was made upon commencement of this action (see id. at 870, 878; DiLascio v DiLascio, 170 AD3d 804, 806, 808; Schiffer v Schiffer, 21 AD3d 889, 890). Consequently, we remit the matter to the Supreme Court, Nassau County, for a determination as to the amount of maintenance arrears from June 29, 2012, affording the defendant appropriate credits, if any. The court also should determine whether the payment of any arrears due should be made in one sum or periodic sums (see Sinnott v Sinnott, 194 AD3d at 878-879).
Further, under the circumstances of this case, the Supreme Court should have directed the defendant to pay the plaintiff's health insurance costs during the period the defendant was obligated to pay maintenance, unless and until the plaintiff became eligible for coverage through employment during that period (see Domestic Relations Law § 236[B][8][a]; Gorman v Gorman, 165 AD3d 1067, 1073). Since this directive should be effective as of the date the request was made, in this case June 29, 2012, we remit the matter to the Supreme Court, Nassau County, for a determination as to what, if any, amounts are owed by the defendant to the plaintiff on account thereof (see Sinnott v Sinnott, 194 AD3d at 879; DiLascio v DiLascio, 170 AD3d at 808; Gorman v Gorman, 165 AD3d at 1073).
For purposes of calculating child support in divorce actions commenced prior to January 24, 2016, courts must deduct from the income of the payor spouse the amount of maintenance that he or she has paid or is required to pay, but should not include maintenance payments received by the payee spouse when calculating his or her income (see Wallach v Wallach, 37 AD3d 707, 709; Shapiro v Shapiro, 35 AD3d 585, 586), except in circumstances inapplicable here (see Lueker v Lueker, 72 AD3d 655, 658; Harrison v Harrison, 255 AD2d 490, 491). In determining the defendant's income for child support purposes, the Supreme Court correctly deducted from the defendant's income the maintenance he was required to pay, but incorrectly included the maintenance payments received by the plaintiff to her income (see Wallach v Wallach, 37 AD3d at 709). Accordingly, we remit the matter to the Supreme Court, Nassau County, for a new determination of the defendant's basic child support obligations and the parties' pro rata shares of the children's extracurricular activities, add-on expenses, and unreimbursed medical expenses consistent herewith and a recalculation of the applicable amounts due, including any arrears owed.
Contrary to the plaintiff's contention, the Supreme Court providently exercised its discretion in distributing certain assets. "A marriage has been characterized, among other things, as an economic partnership[,] which upon its dissolution necessitates a winding up of the parties' economic affairs and a severance of their economic ties by an equitable distribution of the marital assets" (Schanback v Schanback, 130 AD2d 332, 341 [citation and internal quotation marks omitted]). "Equitable distribution law does not mandate an equal division of marital property" (Jones v Jones, 182 AD3d 586, 587 [internal quotation marks omitted]). "Domestic Relations Law § 236 mandates that the equitable distribution of marital assets be based on the circumstances of the particular case and directs the courts to consider a number of statutory factors" (Fairchild v Fairchild, 149 AD3d 810, 810-811 [internal quotation marks omitted]; see Domestic Relations Law § 236[B][5][c], [d]). "Those factors include: the income and property of each party at the time of marriage and at the time of commencement of the divorce action; the duration of the marriage; the age and health of the parties; the loss of inheritance and pension rights; any award of maintenance; any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of marital property by the party not having title; and any other factor which the court shall expressly find to be just and proper" (Jones v Jones, 182 AD3d at 587-588 [internal quotation marks omitted]). "A trial court considering th[ose] factors . . . has broad discretion in deciding what is equitable under all of the circumstances" (Fairchild v Fairchild, 149 AD3d at 811 [internal quotation marks omitted]). [*4]Unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed (see Kotsakis v Kotsakis, 169 AD3d 1023, 1023).
Here, as the Supreme Court noted, most of the parties' assets were distributed pursuant to their postnuptial agreement and amendments thereto, and through a stipulation entered into during trial. With regard to the remaining assets, the court awarded the plaintiff a 2005 Boston Whaler boat, while the defendant was awarded a 2001 Boston Whaler boat and retained title to a 2007 Aston Martin convertible. The court's determination regarding the distribution of these remaining assets was a provident exercise of discretion and will not be disturbed (see id. at 1023).
"There is a statutory rebuttable presumption that counsel fees shall be awarded to the less monied spouse. The decision to award an attorney's fee in a matrimonial action lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as that of the trial court. In exercising that discretion, the court must consider the financial circumstances of the parties and the circumstances of the case as a whole, including the relative merits of the parties' positions and whether either party has delayed the proceedings or engaged in unnecessary litigation" (DiNapoli v DiNapoli, 200 AD3d 1027, 1031 [citations and internal quotation marks omitted]).
Here, the Supreme Court properly considered the relevant circumstances and providently exercised its discretion in awarding the plaintiff attorneys' fees in the sum of $75,000. Although the plaintiff correctly contends that the court had discretion to award her fees for services performed by her attorneys prior to the commencement of this action (see O'Shea v O'Shea, 93 NY2d 187, 189), she has failed to demonstrate that the court improvidently exercised its discretion in declining to do so.
Finally, on this appeal, the plaintiff has failed to establish that the judgment of divorce sets forth her incorrect maiden name. The record reflects that the plaintiff utilized the name set forth in the judgment of divorce when the parties executed their antenuptial agreement, yet the plaintiff has not offered any explanation for her contention that it was not her maiden name. This determination is without prejudice to the plaintiff's making an application for that relief in the Supreme Court.
The plaintiff's remaining contentions are without merit.
IANNACCI, J.P., FORD, VOUTSINAS and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court